Thomas A. Saenz (Cal. Bar No. 159430)
Ernest Herrera (Cal. Bar No. 335032)
Luis Lozada (Cal. Bar No. 344357)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org

    eherrera@maldef.org
    llozada@maldef.org

*Attorneys for Plaintiff and
the Proposed Class*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

KARLA AYALA, on behalf of
herself and all others similarly situated,

Plaintiff,

v.

VALLEY FIRST CREDIT UNION,

Defendant.

Case No.: 1:22-CV-00657-HBK

**NOTICE OF RENEWED MOTION AND RENEWED UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**

Magistrate Judge: Helena M. Barch-Kuchta
Hearing Date: November 8, 2023
Hearing Time: 2:00 p.m.
Courtroom: Yosemite Federal Courthouse

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on November 8, 2023, at 2:30 p.m., or as soon thereafter as the matter may be heard, in the Yosemite Federal Courthouse, located at 9004 Castle Cliffs Court, Yosemite Valley, CA 95389, Plaintiff Karla Ayala, individually and as class representative on behalf of the Class, will, and hereby, do move this Court for the following relief with respect to the Settlement Agreement and Release with Valley First Credit Union:

1.    That the Court certify, for settlement purposes only, the settlement class under Federal Rule of Civil Procedure 23(a) and (b)(3);

2.    That the Court appoint Plaintiff Karla Ayala as Class Representative;

3.    That the Court appoint Plaintiff's attorneys as Class Counsel;

4.    That the Court grant preliminary approval of the Settlement;

5.    That the Court approve mailing to the Class Members the proposed Class Notice;

6.    That the Court appoint RG2 Claims Administration LLC as the Settlement Administrator; and

7.    That the Court schedule a hearing for final approval of the Settlement.

This Renewed Motion is made on the grounds that the Settlement is the product of arms-length, good-faith negotiations; is fair, reasonable, and adequate to the Class, and should be preliminarily approved, as discussed in the attached memorandum.

This Renewed Motion is based on: this notice; the following memorandum in support of the motion; the Declaration of Thomas A. Saenz and attached Settlement Agreement and Release; the Court's record of this action; all matters of which the Court may take notice; and oral and documentary evidence presented at the hearing on the Renewed Motion.  Defendant Valley First Credit Union does not oppose this Motion.

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................2

III.    PROPOSED SETTLEMENT ........................................................................2

        A.      The Settlement Class............................................................................2

        B.      Settlement Overview............................................................................3

                1.      Corrective Action........................................................................3

                2.      Monetary Relief ..........................................................................3

        C.      Distribution to Class Members ............................................................3

        D.      Cy Pres Distribution of any Unclaimed Settlement Funds .....................3

        E.      Notice to Class Members .....................................................................4

        F.      Attorneys' Fees and Expenses, Settlement Administrator's Costs, and Class
                Representative Service Award ...............................................................4

IV.     ARGUMENT ..............................................................................................5

        A.      Certification of the Class is Proper Under Rule 23.................................5

                1.      Rule 23(a) is Satisfied................................................................5

                2.      Rule 23(b)(3) is Satisfied ...........................................................7

                3.      Plaintiff's Counsel Should be Appointed as Class Counsel .........8

        B.      The Settlement is Fair, Adequate, and Reasonable.................................8

        C.      The Proposed Incentive Award is Fair, Adequate and Reasonable. ......10

        D.      The Proposed Notice is Clear and Adequate .......................................11

        E.      The Court Should Approve Class Counsel's Proposed *Cy Pres* Recipient. ...........11

V.      A FINAL APPROVAL HEARING SHOULD BE SCHEDULED....................12

VI.     CONCLUSION...........................................................................................13

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5

*Abdullah v. U.S. Sec'y Assocs.*,
   731 F.3d 952 (9th Cir. 2013) ........................................................................6

6

7

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997).............................................................................6, 7

8

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)................................................................................7

9

10

*Boyd v. Bank of Am. Corp.*,
   300 F.R.D. 431 (C.D. Cal. 2014) .............................................................5

11

12

*Castillo v. Bank of Am., NA*,
   980 F.3d 723 (9th Cir. 2020) ..................................................................6

13

14

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................11

15

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ...............................................................10

16

17

*Ellis v. Costco Wholesale Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012).............................................................7

18

19

*Evans v. Zions Bancorporation, N.A.*,
   2002 WL 16815301 (E.D. Cal. Nov. 8, 2022)............................................10

20

21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998), *overruled on other grounds by Wal-Mart
   Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)...........................................5, 8

22

*In re Easysaver Rewards Litig.*,
   906 F.3d 747 (9th Cir. 2018) ................................................................12

23

24

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ....................8

25

26

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .............................................................5

27

*Rivera v. Agreserves, Inc.*,
   2017 WL 445710 (E.D. Cal. Feb. 1, 2017)................................................10

28

i

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...........................................................................8, 10

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) ...............................................................................1

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...............................................................................10

*Stevens v. Harper*,
   213 F.R.D. 358 (E.D. Cal. 2002) ............................................................................6

*Tierno v. Rite Aid Corp.*,
   No. C 05-02520 TEH, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006).....................7

**Statutes**

Cal. Civil Code § 52(a) ...............................................................................................8

California Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.* .......................2

Civil Rights Act .........................................................................................................9

Civil Rights Act of 1966, 42 U.S.C. § 1981 .................................................................2

Section 1981 or the Unruh Act ....................................................................................6

Unruh Act.................................................................................................................8, 9

**Rules**

Fed. R. Civ. P. 23 ............................................................................................ *passim*

**Other Authorities**

ALBA CONTE & HERBERT B. NEWBERG, 4 NEWBERG ON CLASS ACTIONS § 11:22
   (4th ed. 2002) .........................................................................................................5

Manual for Complex Litigation §§ 21.632-634 (4th ed. 2004) .....................................5

ii

<u>MEMORANDUM IN SUPPORT OF RENEWED UNOPPOSED MOTION</u>

**I.     INTRODUCTION**

Plaintiff submits this Renewed Motion to correct the deficiencies highlighted in the Court's Order Denying Preliminary Approval without prejudice, dated September 26, 2023.  ECF No. 22.  The class action Settlement Agreement and Release ("Settlement") now before the Court was the result of more than six-months of direct discussions and negotiations between the Parties regarding the legal issues raised in this case, the viability of Plaintiff's claims, the accurate identification of proposed settlement class members, and the alleged potential damages.[1]

The Settlement, which was the result of arms-length and good faith negotiations conducted through direct communications between counsel, provides a cash Settlement Fund of $120,000 for the 48 members of the proposed settlement Class ($2,500 per class member).  All Class Members reside in the Central Valley of California.  The Settlement represents a recovery of more than half of the statutory damages for Plaintiff's claims and the Individual Settlement Payments will be distributed to the members of the class without need for them to complete a claim form or take any additional steps such as submitting documentation.  In addition to monetary relief, the Settlement provides corrective action.  Valley First has agreed to update its policy of denying membership to applicants who are not U.S. citizens or Lawful Permanent Residents, eliminating the harm alleged in the complaint for all future applicants.

For the reasons set forth below, the Settlement represents an excellent result for the Class in this litigation and satisfies the requirements of Rule 23 and Ninth Circuit precedent.  *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1060 (9th Cir. 2019).  The Parties have engaged in good-faith, arms-length settlement negotiations, including confirmatory discovery.  Therefore, Plaintiff respectfully requests this Court grant preliminary approval of the Settlement.  Granting preliminary approval will allow notice of the Settlement to be distributed to the members of the Class to let them object, or opt-out, and for a hearing to be scheduled to consider whether to grant final approval.

---

[1] The Settlement is attached as Exhibit A to the Declaration of Thomas A. Saenz in Support of Plaintiff's Unopposed Motion for Preliminary Settlement Approval ("Saenz Decl.").

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Karla Ayala is a resident of Turlock, California.  Since 2012, Plaintiff has been a recipient of Deferred Action for Childhood Arrivals ("DACA").  As a DACA recipient, Plaintiff is authorized to work in the United States and has a "work only" Social Security Number.  In October 2021, Plaintiff applied for a personal loan from Defendant Valley First Credit Union ("Valley First").  Plaintiff was instructed that she must first become a Valley First member to apply for a personal loan.  On November 4, 2021, Plaintiff applied for membership with Valley First.  Valley First denied Plaintiff's membership and loan applications because Plaintiff could only provide a "work only" Social Security Number.

On June 1, 2022, Plaintiff filed a putative class action complaint in this Court against Valley First, alleging claims for alienage discrimination in violation of the Civil Rights Act of 1966, 42 U.S.C. § 1981 ("Section 1981"), and the California Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.* (the "Unruh Act").  Compl., ECF No. 1.  Plaintiff alleges that Valley First has a policy of denying membership to applicants who are not United States citizens or Lawful Permanent Residents (the "Challenged Practice").  *Id.*

On August 26, 2022, and October 26, 2022, the parties jointly requested to extend the time for Valley First to respond to the Complaint.  ECF Nos. 7, 9, respectively.  During that time, the parties were engaged in ongoing good faith negotiations to resolve the claims alleged in the Complaint, ultimately resulting in an agreement in principle to settle.  On December 5, 2022, the parties filed a joint notice of settlement.  ECF No. 11.

## III.   PROPOSED SETTLEMENT

### A.   The Settlement Class

For settlement purposes only and consistent with the Parties' Settlement, Plaintiff seeks certification of the following Class, defined as: the 48 individuals who, according to Valley First's records, were legally residing in California and applied for membership with Valley First from June 1, 2020 through June 1, 2022 using a "work only" Social Security Number and were denied membership based solely on their lack of U.S. citizenship.  Settlement § 1(d).

**PLAINTIFF'S RENEWED UNOPPOSED MOTION**
**FOR PRELIMINARY SETTLEMENT APPROVAL**                              CASE NO.: 1:22-CV-00657-HBK

### B. Settlement Overview

The Settlement provides two important forms of relief for the Class Members: (1) corrective action under which Valley First will not deny applicants membership based solely on their lack of U.S. citizenship, unless required by law, rules, or regulations to do so (the "Challenged Practice"), and will train its managers, supervisors, and staff on the policy set forth in the Settlement, *id*., § 2; and (2) Defendant will pay $120,000 to be used for individual payments by check made payable to each Class Member (the "Settlement Fund") to compensate Class Members for the alleged statutory violations and harm suffered, *id* § 1(s).

### 1. Corrective Action

The Settlement provides for comprehensive corrective action to Valley First's policies to eliminate any present or future risk of the Challenged Practice. Specifically, Valley First agrees that it has ceased the Challenged Practice, and agrees that it will not deny applicants membership based solely on their alienage or lack of U.S. citizenship, unless required by law, rule, or regulation. *Id*. § 2. Moreover, Valley First agrees that it will train its managers, supervisors, and staff on the aforementioned policy. *Id*.

### 2. Monetary Relief

Valley First agrees to create a $120,000 Settlement Fund that will be used to make individual payments in the amount of $2,500 by check to each Class Member. *Id*. § 11(d)(iv). The entire settlement fund will be paid to Class Members; Defendant separately will pay the costs of administration; court approved attorneys' fees and costs; and incentive awards.

### C. Distribution to Class Members

The Settlement does not require class members to submit a claim or take any action to claim the monies they are entitled to under the Settlement. *Id*. § 11(d)(iv). Rather, payments will be made to class members by check payable to the Class Member and mailed to the Class Member's last known address. *Id*. Addresses will be updated by the Claims Administrator through skip-trace or other means.

### D. Cy Pres Distribution of any Unclaimed Settlement Funds

If any checks mailed to Class Members remain uncashed for 150 days after the checks are

sent ("Unclaimed Settlement Funds"), those funds do not revert to Valley First. *Id*. § 12. Instead, any Unclaimed Settlement Funds will be paid to Immigrants Rising, if approved by the Court, as a *cy pres* award. *Id*. Immigrants Rising is a California-based non-profit organization that provides scholarships and financial resources to undocumented immigrants and, specifically, DACA recipients. *See* http://immigrantsrising.org.

### E.    Notice to Class Members

The Settlement includes proposed English and Spanish language short form and long form notices to the class members that inform them of the terms of the Settlement and their rights to object to, or opt-out of, the Settlement, or to do nothing and receive the benefits of the Settlement and be bound by it. *Id*., Exs. 1-2; Saenz Decl., Exs. C-D (revised Long and Short Form Notices, respectively). All class members will receive notice by mail, sent to the best available mailing address for each Class Member, updated as appropriate by running the Class Member's name through the National Change of Address Registry. Settlement § 5(b). For all notices that are returned as undeliverable, the Settlement Administrator will use standard skip tracing devices to obtain forwarding address information and re-mail the notice. *Id*. A website and telephone number will also be established to provide Class Members with additional information relating to the Settlement. *Id*. § 6(g).

### F.    Attorneys' Fees and Expenses, Settlement Administrator's Costs, and Class Representative Service Award

Attorneys' fees, cost of litigation and the cost of Notice and Administration shall be paid by Defendant in addition to the payments to Class Members. Class Counsel will file a motion seeking approval for its attorneys' fees and costs. *Id*. § 11(d)(i). Valley First will not oppose an application for attorneys' fees of up to $50,000. *Id*. Further, Class Counsel estimated fees will not exceed $36,000 which represent 30% of the Settlement Fund Value of $120,000. This estimate of attorneys' fees encompasses any work conducted by Class Counsel prior to settlement, and any future work conducted following the Court's order granting preliminary approval.

Class Counsel will also file a motion requesting that the Court approve a payment of the Settlement Administrator's costs, estimated to be approximately $10,000. The Settlement

4

1    Administrator shall be RG2 Claims Administration, LLC.  A copy of the Administrator's proposal

2    and background information on the Administrator is attached to the Saenz Declaration as Ex. B.

3    Class Counsel shall also apply for a Service Award for the Named Plaintiff of up to $5,000

4    in recognition of her efforts in this case that have resulted in a benefit to all of the Class Members.

5    *Id*. § 11(d)(ii)-(iii).

6    **IV.    ARGUMENT**

7    Settlement approval "involves a two-step process in which the Court first determines

8    whether a proposed class action settlement deserves preliminary approval and then, after notice is

9    given to class members, whether final approval is warranted."  *Nat'l Rural Telecomm. Coop. v.*

10    *DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *see also* Manual for Complex Litigation §§

11    21.632-634 (4th ed. 2004).  The court must make two determinations at the preliminary approval

12    stage: first, the court must determine that the settlement class meets the requirements for class

13    certification if a class has not yet been certified, Fed. R. Civ. P. 23(a), (b); second, the court must

14    determine on a preliminary basis that the settlement is fair, reasonable, and adequate such that

15    notice should be sent to the proposed class, Fed. R. Civ. P. 23(e)(2)).  *See Hanlon v. Chrysler Corp.*,

16    150 F.3d 1011, 1025-26 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v.*

17    *Dukes*, 564 U.S. 338, 338 (2011).

18    **A.    Certification of the Class is Proper Under Rule 23**

19    "The validity of use of a temporary settlement class is not usually questioned."  ALBA

20    CONTE & HERBERT B. NEWBERG, 4 NEWBERG ON CLASS ACTIONS § 11:22 (4th ed. 2002).  For

21    settlement purposes here, the Parties agree to certify the proposed Class.  Additionally, the relevant

22    factors under Rule 23 weigh in favor of certification.

23    **1.    Rule 23(a) is Satisfied**

24    First, numerosity is satisfied because joinder of the Class Members would be impractical.

25    Fed. R. Civ. P. 23(a)(1).  Valley First's records identify 48 individual applicants who applied for

26    membership and were denied using a "work only" social security number during the class period.

27    *See Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 437 (C.D. Cal. 2014) (numerosity "is

28    presumptively satisfied when there are at least forty members.").

Second, commonality is satisfied because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). When determining whether commonality is met, the Supreme Court has instructed that the focus is on whether there are common issues of fact among class members and whether class treatment will "generate common answers apt to drive the resolution of the litigation." *Abdullah v. U.S. Sec'y Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Here, common issues include whether Valley First's policy at the time Plaintiff applied for membership denied Plaintiff and Class Members the opportunity to become members and apply for financial products on the basis of their status as non-U.S. citizens, alienage, or immigration status, and whether Valley First violated Section 1981 or the Unruh Act. *See Stevens v. Harper*, 213 F.R.D. 358, 377 (E.D. Cal. 2002) (in the civil rights context, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.").

Third, typicality is satisfied because the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020) (quotation marks omitted). Here, Plaintiff's claims are typical of the Class she seeks to represent because she alleges that: (1) she was legally residing in California, (2) she applied for membership at Valley First in 2021, (3) she applied for membership using a "work only" social security number, and (4) she was denied membership because she is not a U.S. citizen.

Fourth, Plaintiff is an adequate class representative because she has and will adequately protect the interests of the Class. Fed. R. Civ. P. 23(a)(4). The adequacy requirement is met where a class representative "possess[es] the same interests and suffer[s] the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (quotation marks omitted). Here, Plaintiff has the same interests as other Class Members and has shown that she can fairly and adequately protect Class Member's interests. Like all Class Members, Plaintiff was denied membership by Valley First because she is not a U.S. citizen. Plaintiff has no conflicts of interest with the Class Members and Class Members stand to benefit substantially from Plaintiff's

6

1  pursuit of damages on their behalf.

2      Additionally, Plaintiff is represented by adequate counsel.  The Mexican American Legal

3  Defense and Educational Fund ("MALDEF") has extensive experience litigating complex civil

4  rights class actions and have vigorously prosecuted this action on behalf of Plaintiff and have

5  engaged in extensive settlement negotiations with Valley First.  For these reasons, Class Counsel

6  satisfies the adequacy requirement of Rule 23(a).

7          **2.      Rule 23(b)(3) is Satisfied**

8      Rule 23(b)(3) requires that common questions predominate over individual ones and a class

9  action is superior to other available methods for adjudicating the controversy.  Fed. R. Civ. P.

10  23(b)(3).  Both requirements are met here.

11      Here, the Class is sufficiently cohesive to satisfy predominance.  *Amchem*, 521 U.S. at 623.

12  Predominance does not require "that each element of [a plaintiff's] claim [is] susceptible to

13  classwide proof."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (quotation

14  marks omitted).  Rather, the "predominance inquiry asks whether the common, aggregation-

15  enabling, issues in the case are more prevalent or important than the non-common, aggregation-

16  defeating, individual issues."  *Amchem*, 521 U.S. at 626 (quotation marks omitted).  Plaintiff

17  challenges Valley First's membership eligibility criteria and policies that apply to all Class

18  Members.  Common questions as to their nature and legality can be adjudicated collectively and

19  will drive the resolution of Plaintiff's claims.  *See Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492,

20  509 (N.D. Cal. 2012) (predominance is satisfied as to discrimination claims where plaintiffs

21  challenged "specific employment practices" that applied "companywide").

22      Whether Rule 23's superiority factor is met rests on factors like individual class members'

23  desire to bring individual actions and the utility of concentrating the litigation in one forum.  Fed.

24  R. Civ. P. 23(b)(3).  Here, "there is no indication[] that class members seek to individually control

25  their cases, that individual litigation is already pending in other forums, or that this particular forum

26  is undesirable for any reason."  *Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2006 WL 2535056,

27  at *11 (N.D. Cal. Aug. 31, 2006).  Because the class mechanism will achieve economies of scale

28  for Class Members, conserve judicial resources, and preserve public confidence in the system by

7

**PLAINTIFF'S RENEWED UNOPPOSED MOTION**
**FOR PRELIMINARY SETTLEMENT APPROVAL**                              CASE NO.: 1:22-CV-00657-HBK

1    avoid repetitive proceedings and preventing inconsistent adjudications, superiority is met.

2    **3.    Plaintiff's Counsel Should be Appointed as Class Counsel**

3    Adequacy of class counsel depends on (1) work performed on the matter, (2) experience,

4    (3) knowledge of the law, and (4) resources that counsel can commit.  Fed. R. Civ. P. 23(g)(1)(A).

5    Class Counsel readily satisfy these criteria, as set forth above.

6    **B.    The Settlement is Fair, Adequate, and Reasonable**

7    Once the Court has found class certification is proper, it must determine if the settlement is

8    "fundamentally fair, adequate, and reasonable."  *Hanlon*, 150 F.3d at 1026.  In deciding whether to

9    grant preliminary approval of a settlement, courts "put a good deal of stock in the product of an

10   arms-length, non-collusive, negotiated resolution[.]"  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948,

11   965 (9th Cir. 2009).  Courts may consider and balance a number of other factors, such as: "[1] the

12   strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further

13   litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered

14   in settlement; the extent of discovery completed . . . [and] [5] the experience and views of

15   counsel[.]"  *Hanlon*, 150 F.3d at 1026 (considering other factors not relevant here).

16   Here, the weight of factors demonstrates that the Settlement is fair, adequate, and

17   reasonable.  First, Plaintiff faces substantial obstacles to full recovery and liability is not

18   guaranteed.  Plaintiff's claims for discrimination on behalf of DACA recipients with "work only"

19   Social Security Numbers present a relatively novel theory with numerous unsettled issues.  Second,

20   the monetary and corrective action relief provide substantial value for Class Members.  Class

21   Members will receive individual payments of $2,500, which amounts to 62.5% of the $4,000

22   statutory damages available under the Unruh Act for each discriminatory act.  Cal. Civil Code §

23   52(a).  This is an excellent result for the Class Members.  *See In re Heritage Bond Litig.*, No. 02-

24   ML-1475 DT, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (recovery of 36% of total net

25   loss is an "exceptional result").  Similarly, the Settlement provides prospective corrective action

26   intended to eliminate allegedly discriminatory practices.  This corrective action relief represents

27   the *maximum* degree of relief available under the circumstances.  Third, Class Counsel's experience

28   and strong approval of the Settlement weighs in favor of approval.  Saenz Decl. ¶¶ 4-11.  Finally,

**PLAINTIFF'S RENEWED UNOPPOSED MOTION
FOR PRELIMINARY SETTLEMENT APPROVAL**                                    CASE NO.: 1:22-CV-00657-HBK

the Settlement was reached as the result of lengthy, thorough, arms-length negotiations. *Id.* ¶ 13. Specifically, the Parties, through counsel over a six-month period: exchanged informal discovery, including membership application and loan records, copies of policies and procedures, and records regarding Defendant's membership base to assess the merits of Plaintiff's discrimination claims and the number of potentially impacted Class Members. Following this exchange of discovery, and an evaluation of the terms of court approved class action settlements in similar cases filed by Class Counsel against several banks, the parties negotiated the terms of the Settlement, including the payments to individual Class Members and Defendant's obligation to pay for attorneys' fees, the cost of an incentive award and the cost of administration in addition to the payments to Class Members. *Id.* Overall, the Parties exchanged multiple offers and counter-offers over this period until a settlement in principle was reached.*Id.*

Even though Defendant is a much smaller institution, the terms of the Settlement are comparable to the settlements approved by the Northern District of California in class action cases filed against Sofi and Wells Fargo. Class Counsel initially demanded full payment of the potential damages for each class member. However, because of potential defenses to Class Member Claims, including an argument that the Civil Rights Act and Unruh Act do not apply to discrimination based on immigration status, the Parties eventually agreed to payments to each class member of just over 50% of statutory damages, along with a commitment by Defendant to modify its admission and lending practices. The parties also negotiated the source of funds to pay for Class Counsel's fees and costs, a Service Award and the costs to implement the settlement. The Court should take note that the parties *did not* negotiate the amount of Class Counsel's fees and costs as part of the settlement; they only negotiated the source of funds for the payment of fees and costs and the other costs associated with the Settlement. Defendant demanded payment of all costs from the Settlement Fund but eventually agreed to pay the costs *in addition to* the Settlement Fund. Defendant reserved the right to object to Class Counsel's fees. The parties eventually agreed that Class Counsel should have "clear sailing" up to $50,000. Again, Defendant has no knowledge of the actual amount of Class Counsel's fees and costs.

There was no collusion or self-dealing in connection with the negotiations or the agreement

9

to the terms of the Settlement.  Accordingly, the Settlement is fair, adequate, and reasonable.

### C.   The Proposed Incentive Award is Fair, Adequate and Reasonable.

Class Counsel will apply for an "Incentive Award" of $5,000 for the services performed by Plaintiff Ayala.  As the Court has acknowledged in its Order, an incentive award is permitted in the Ninth Circuit based on the services performed and time spent by the Named Plaintiff.  *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

Here, an incentive award of $5,000 is reasonable to compensate Plaintiff Ayala for her time and effort assisting Class Counsel to prosecute the claims of the Class Members and negotiate a settlement on behalf of the Class.  The proposed incentive award is within the range approved by courts in the Ninth Circuit, where "an incentive award of $5,000 is presumptively reasonable." *Evans v. Zions Bancorporation, N.A.*, 2002 WL 16815301, at *8 (E.D. Cal. Nov. 8, 2022) (approving incentive award to class representatives of $5,000); *see Rivera v. Agreserves, Inc.*, 2017 WL 445710, at *17 (E.D. Cal. Feb. 1, 2017) (approving incentive award to class representative of $3,000).

Further, Plaintiff Ayala faced heightened risk in bringing this action based on her lack of permanent immigration status, which makes her an attractive target for harassment and vulnerable to potential immigration consequences.  Incentive payments are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 948–59 (9th Cir. 2009); *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it necessary to induce an individual to participate in the suit.").  Plaintiff Ayala had several telephone conversations and email communications with Class Counsel, have provided documents, and provided background information.  By bringing this action Plaintiff Ayala placed herself at risk by publicizing her immigration status and revealing personal information.  Therefore, without Plaintiff Ayala's participation, Class Counsel would not have been able to bring this action and achieve an exceptional result for the Class.

### D. The Proposed Notice is Clear and Adequate

Rule 23(c)(2) requires that class notice be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted).

Here, the proposed long and short form notices are easily understandable and include: (1) pertinent details about the case, including the nature of Plaintiff's claims; (2) the definition and scope of the proposed Class; (3) contact information for Class Counsel to answer questions; (4) the address for a website and telephone line maintained by the Settlement Administrator for Class Members to obtain important case documents and information; (5) instructions to file an objection or opt out of the Class; and (6) the date, time, and location of the fairness hearing. Settlement, Exs. 1-2. Furthermore, the notice will be sent directly by mail to the individual Class Members identified in Valley First's records. *Id* § 5. To ensure notice is mailed to the best available address, the Settlement Administrator will run the names and addresses of the Class Members through the National Change of Address Registry. *Id.* § 5(b). In the event notice is returned undeliverable, the Settlement Administrator will use standard skip tracing devices to obtain forwarding address information. *Id.* Finally, given that many Class Members may only understand Spanish, the notice will be sent in both Spanish and English. *Id.* And, it will provide that questions be directed to MALDEF attorneys who are experienced dealing with bilingual and non-English speaking clients.

### E. The Court Should Approve Class Counsel's Proposed *Cy Pres* Recipient.

Given the size of the induvial awards in this case, the Parties do not anticipate there will be significant, if any, unclaimed funds. In the event there are unclaimed funds, Class Counsel proposes Immigrants Rising as the *cy pres* recipient. Immigrants Rising provides financial and other resources to immigrants, especially DACA recipients. As such, there is a nexus between the work of Immigrants Rising and the subject matter of this lawsuit—alleged financial discrimination

11

against non-citizens.  *See In re Easysaver Rewards Litig.*, 906 F.3d 747, 761–62 (9th Cir. 2018) (cy pres recipients should be selected in light of the objectives of the underlying statute and the interest of the class).  Also, Immigrants Rising is a California organization; and, although is provides services nationally, it does substantial work in the Central Valley, which is where the Class Members are located.

## V.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

Based on the deadlines set forth in the Settlement and Plaintiff's proposed order granting preliminary approval, in consultation with Valley First, Plaintiff proposes the following schedule for finalizing and implementing the Settlement:

| | |
|---|---|
| **Preliminary Approval Hearing** | November 8, 2023 |
| Preliminary Approval Order* | November 15, 2023 |
| Deadline for the Settlement Administrator to mail notice and for Settlement Website to go live | December 15, 2023 |
| Bar Date to Opt Out or Object | January 14, 2024 |
| Deadline to file Motion for Final Approval and Motion for Award of Fees, Costs, and Service Award | February 5, 2024 |
| **Final Approval Hearing** | March 6, 2024 |
| Final Approval Order* | March 13, 2024 |
| Deadline for Valley First to transfer the Settlement Fund, amount awarded to Class Counsel for attorneys' fees and costs, any service award authorized by the Court, and fees and costs payable to the Settlement Administrator | March 23, 2024 |
| Effective Date (assuming no appeals)* | April 12, 2024 |
| Settlement Administrator to pay amount awarded to Class Counsel for attorneys' fees and costs, any service award authorized by the Court, and Individual Settlement Payments | April 22, 2024 |

*Assumed dates for purposes of calculating subsequent dates.

1

## VI.    CONCLUSION

2

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) certify, for

3

settlement purposes only, the settlement class  under Federal Rules of Civil Procedure 23(a) and

4

23(b)(3); (2) grant preliminary approval of the Settlement; (3) appoint Plaintiff Karla Ayala as

5

Class Representative, her counsel MALDEF as Class Counsel, and RG2 Claims Administration

6

LLC as Settlement Administrator; (4) approve mailing to the Class Members the Proposed Notice,

7

and the establishment of a settlement website; and (5) schedule a hearing for final approval of the

8

Settlement  after entry of the Preliminary Approval Order.

9

10    Dated: October 3, 2023                        Respectfully submitted,

11

12                                                  */s/ Thomas A. Saenz*
                                                    Thomas A. Saenz (Cal. Bar No. 159430)
13                                                  Ernest Herrera (Cal. Bar No. 335032)
                                                    Luis Lozada (Cal. Bar No. 344357)
14                                                  MEXICAN AMERICAN LEGAL DEFENSE
                                                    AND EDUCATIONAL FUND
15                                                  634 South Spring Street, 11th Floor
                                                    Los Angeles, CA 90014
16                                                  Telephone: (213) 629-2512
                                                    Facsimile: (213) 629-0266
17                                                  Email: tsaenz@maldef.org
18                                                          eherrera@maldef.org
                                                            llozada@maldef.org
19
20                                                  *Attorneys for Plaintiff and*
                                                    *the Proposed Class*
21

22

23

24

25

26

27

28

13