UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARLA AYALA, an individual on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VALLEY FIRST CREDIT UNION,<br><br>Defendant. | Case No. 1:22-cv-00657-HBK<br><br>ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT[1]<br><br>(Doc. No. 23) |

Pending before the Court is Plaintiff Karla Ayala's ("Plaintiff" or "Ayala") Renewed Motion and Renewed Unopposed Motion for Preliminary Settlement Approval. (Doc. No. 23. "Motion"). Filed in support is the declaration of proposed class counsel Thomas A. Saenz (Doc. No. 23-1 at 1-9)[2], the Settlement Agreement and Release which include the originally proposed long and short form notices (Doc. No. 23-2 at 2-22), the proposed settlement administrator's brochure outlining its experience and services (Doc. No. 23-3 at 2-13), revised copy of the Long Form Notice (Doc. No. 23-4 at 2-9), revised copy of the Short Form Notice (Doc. No. 23-5 at 2), and the redlined version of the Long and Short Form Notices reflecting changes made pursuant to

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 20).
[2] The Court refers to the page numbers as they appear on the Court's CM/ECF system.

the Court's September 26, 2023 Order denying preliminary approval of the class action settlement without prejudice (Doc. No. 23-6 at 1-10). Having considered the renewed moving papers, as well as the Court's files, the Court issues the following order approving the settlement.

## BACKGROUND

**A. Claims and Proceedings**

Plaintiff Karla Ayala ("Ayala") filed the present action on June 1, 2022 on behalf of herself and others similarly situated. (Doc. No. 1). Asserting subject matter jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367, Plaintiff brings this action alleging claims of alienage discrimination in violation of the Civil Rights Act of 1966, 42 U.S.C. § 1981, and California Civil Code §§ 51, et seq., also known as the Unruh Civil Rights Act ("Unruh Act"). (*Id*. at 2).

Plaintiff is a resident of Turlock, California, and a Deferred Action for Childhood Arrivals ("DACA") recipient since 2012. (*Id*.). Because Plaintiff is a DACA recipient, she is authorized to work in the United States and has a "work only" Social Security Number. (*Id*.). Plaintiff's claims are based on Valley First Credit Union ("Defendant" or "Valley First") denying her a personal loan and membership to Valley First because she could provide a "work only" Social Security Number. (*Id*. at 3-5, 7-9; Doc. No. 14 at 5-6). Plaintiff contends that Valley First intentionally discriminates against applicants who are not United States citizens or Lawful Permanent Residents with policies to deny membership to such applicants. (Doc. No. 1 at 7-9). Plaintiff asserts that Defendant's policies violate 42 U.S.C. § 1981 and the Unruh Act. (*Id*.). At the outset of this case, Plaintiff sought to represent all persons who attempted to apply for membership or a financial product from Valley First but were denied membership on a basis of their alienage or immigration status. (*Id*. at 5).

The Parties filed two joint motions to extend time for Defendant to respond to the Complaint, which the Court granted and Defendant's response to the Complaint was to be due no later than December 28, 2022. (Doc. Nos. 7-10). On December 5, 2022, the Parties filed a Joint Notice of Settlement advising the Court that a settlement in principle was reached. (Doc. No. 11). On February 13, 2023, the Parties filed a motion for preliminary settlement approval. (Doc. No.

14). After consent by all Parties, this matter was reassigned to the undersigned on September 7, 2023. (Doc. No. 20). On September 26, 2023, this Court denied, without prejudice, the Parties' motion for preliminary settlement approval. (Doc. No. 22). On October 3, 2023, the Parties filed the instant Renewed Motion. (Doc. No. 23).

### B. Proposed Settlement Terms

#### 1. Settlement Class

The proposed settlement class is identified as:

> the 48 individuals who, according to Defendant's records, were legally residing in California and applied for membership with Defendant from June 1, 2020 through June 1, 2022 using a "work only" social security number and were denied membership based solely on their lack of U.S citizenship.

(Doc. No. 23-2 at 4 ¶ 1(d)). There are 48 class members. (*Id.*).

Class members may opt out of the settlement by submitting a timely written request for exclusion to the settlement administrator. (*Id.* at 8 ¶ 7(a)). Such request must be postmarked on or before the Bar Date to opt out of the settlement. (*Id.*). The Bar Date shall be set by the Court and shall be 30 days after the Notice must be provided to the Class Members.

#### 2. Releases

The class members release the claims asserted in this suit:

> Except as to the rights and obligations provided for under the terms of this Agreement, Named Plaintiff, on behalf of herself and each Class Member who does not opt-out (collectively, "Defendant Releasors"), hereby release and forever discharges Defendant, and all of its past, present and future predecessors, successors, parents, subsidiaries, divisions, employees, affiliates, assigns, officers, directors, shareholders, representatives, attorneys, insurers, and agents (collectively, the "Defendant Releasees") from any and all losses, fees, charges, complaints, claims, debts, liabilities, demands, obligations, costs, expenses, actions, and causes of action of every nature, character, and description, whether known or unknown, asserted or unasserted, suspected or unsuspected, fixed or contingents, which Defendant Releasors now have, own or hold against any of the Defendant Releasees that arise out of and/or relate to the facts and claims alleged in the Complaint, including any claims relating to the Challenged Practice.

(*Id.* at 10 ¶ 13). In addition, Plaintiff provides a release of all known and unknown claims under California Civil Code § 1542:

3

>Defendant Releasors acknowledge that there may be facts and claims about which Defendant Releasors are presently not aware. Defendant Releasors nevertheless agree to waive and release and do waive and release all such claims that are not known or suspected at the time of executing this Settlement Agreement that if known might, or would have, materially affected Named Plaintiff's decision to enter into this Settlement Agreement, or might have materially affected a Class Member's decision to opt-out of the Settlement Class or to object to this Settlement Agreement. Named Plaintiff shall be deemed to have expressly waived and fully, finally, and forever settled and released any and all such unknown claims against Defendant Releasees, whether or not concealed or hidden, without regard to subsequent discovery or existence of different or additional facts, and benefits of any statute or principle of common law similar to California Civil Code Section 1542, which reads:
>
>A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIAL AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(*Id*. at 10-11 ¶ 14).

### 3. Settlement Fund

#### a. Gross Settlement Amount

The gross settlement amount in the Settlement Fund is $120,000.00.  (Doc. No. 23 at 6:9-11; Doc. No. 23-2 at 5 ¶ 1(s)).  This amounts to each class member receiving an individual settlement payment of $2,500.00.  (Doc. No. 23 at 6, 13; Doc. No. 23-2 at 5 ¶ 1(l), 10 ¶ 11(d)(iv)).  Individual settlement payments will be paid by checks made payable and mailed to each class member.  (Doc. No. 23-2 at 5 ¶ (l), 10 ¶ 11(d)(iv)).  If a check is uncashed for one hundred fifty (150) days after it is mailed, then those funds will be paid to a charitable organization as a cy press award.  (*Id*. at 10 ¶ 11(d)(iv), 12).  No portion of the gross settlement amount will revert to the Defendant.  (*Id.* at ¶ 11(e)).

#### b. Attorney's Fees and Costs

Proposed class counsel will file a motion seeking the Court's approval for its attorneys' fees and costs which will be determined by the Court pursuant to the final approval order.  (Doc. No. 23 at 9; Doc. No. 23-2 at 9 ¶ 11(d)(i)).  Proposed class counsel will use the lodestar method to determine their requested attorneys' fees and estimate the fees will not exceed $36,000.00.

(*Id*.). Defendant will pay the attorneys' fees and costs in addition to the Settlement Fund payable to the class members. (Doc. No. 23 at 9). Defendant will not oppose attorneys' fees of up to $50,000.00. (Doc. No. 23 at 9; Doc. No. 23-2 at 9 ¶ 11(d)(i)).

### c. Class Representative Incentive Award

Ayala, the Named Plaintiff, will seek incentive award of up to $5,000.00. (Doc. No. 23 at 10; Doc. No. 23-2 at 9 ¶ 11(d)(ii)). Defendant will not oppose a service award of up to $5,000.00. (Doc. No. 23-2 at 9 ¶ 11(d)(ii)). The incentive award will not be paid from the Settlement Fund and will be paid separately by the Defendant. (*Id*. at 5 ¶ 1(s)).

### d. Settlement Administrator's Fees

The settlement administrator is RG2 Claims Administration, LLC. (Doc. No. 23 at 10; Doc. No. 23-3). The estimated fees and costs for the Settlement Administrator is $10,000.00. (Doc. No. 23 at 9-10; Doc. No 23-2 at 9-10 ¶ 11(d)(iii)). The Defendant will pay the Settlement Administrator's fees and costs. (*Id*.). The Settlement Administrator is not entitled to any funds, or remaining funds, from the Settlement Fund. (*Id*.). The proposed class counsel will file a separate motion requesting Court approval of the Settlement Administrator's costs. (Doc. No. 23 at 9:27-28).

### e. Cy Pres

If any individual settlement payments to class members remain uncashed one hundred fifty (150) days after the check is issued by the settlement administrator, they will be paid to the *cy pres* recipient, Immigrants Rising, a California-based non-profit. (Doc. No. 23 at 8-9; Doc. No. 23-2 at 10 ¶ 11(d)(iv), 12). Immigrants rising "provides scholarships and financial resources to undocumented immigrants and, specifically, DACA recipients." (Doc. No. 23 at 9:3-5). Immigrants Rising does substantial work in the Central Valley, the region of California where the class members are located. (*Id.* at 17).

### f. Corrective Action

As a part of the settlement agreement, Defendant has ceased the "Challenged Practice," denying applicants membership based solely on alienage or lack of U.S. citizenship, and agree that unless required by law, rules or regulations, it will not deny applicants membership based

solely of their alienage or lack of U.S. citizenship.  (Doc. No. 23 at 8:10-15; Doc. No. 23-2 at 5 ¶ 2).

### g. Notice

Notice will be given to class members via a Long Form and Short Form Notice.  (Doc. No. 23-2. at 5 ¶¶ 1(m), (p)).  The Long and Short Form Notices are revised and attached to the Motion.  (Doc. No. 23-4 at 2-9; Doc. No. 23-5 at 2).  The Long Form Notice will be posted in English and Spanish on the Settlement Website.  (Doc. No. 23-2 at ¶ 1(m)).  The Short Form Notice will be sent by mail, in English and Spanish, to the class members.  (*Id.* at ¶ 1(p)).

## APPLICABLE LAW

"Courts reviewing class action settlements must ensure[] that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quotations and citations omitted).  Where parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003).

The Court first determines whether, in its discretion, a class action may be certified.  *Id.; Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1041 (9th Cir. 2012).  Exercise of this discretion "demand[s] undiluted, even heightened, attention in the settlement context."  *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 620 (1997).  This level of attention "is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  *Id.*

To obtain class certification, the plaintiff must affirmatively demonstrate that the class meets the requirements of Rule 23.  *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 350 (2011).  The plaintiff must satisfy the four prerequisites identified in Rule 23(a), as well as one of the three subdivisions of Rule 23(b).  *Amchem Prods., Inc.,* 521 U.S. at 614.  "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively."  *United Steel, Paper & Forestry,*

*Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.,* 593 F.3d 802, 806 (9th Cir. 2010). Certification under Rule 23(b)(3) is appropriate where common questions of law or fact predominate and class resolution is superior to other available methods. Fed. R. Civ. P. 23(b)(3).

Second, after determining that a class may be certified, the district court carefully considers "whether a proposed settlement is fundamentally fair, adequate, and reasonable," recognizing that "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citations omitted); *see* Fed. R. Civ. P. 23(e)(2). Where, as here, a settlement has been reached prior to formal class certification, "a higher standard of fairness" applies due to "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative." *Id.* at 1026; *see Campbell*, 951 F.3d at 1122. Although the court's role in reviewing a proposed settlement is critical, it is also a limited one. The court does not have the ability to "'delete, modify or substitute certain provisions.' The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026 (citation omitted). The court may, however, voice its reservations about the proposed settlement and set conditions that, if satisfied, might lead the court to approve it. Manual for Complex Litigation (Fourth) at 309, § 21.61 (2004).

When evaluating fairness, adequacy, and reasonableness at the final approval stage, the court will consider a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Kim v. Allison*, 8 F.4th 1178 (9th Cir. 2021).

Because some of these factors cannot be fully assessed until the Court conducts the final approval hearing, however, preliminary approval of a settlement and notice to the proposed class are appropriate if: "[1] the proposed settlement appears to be the product of serious, informed,

non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval . . . ." *Criswell v. Boudreaux*, No. 1:20-cv-01048-DAD-SAB, 2021 WL 4461640, at *3 (E.D. Cal. Sept. 29, 2021) (citations omitted).

## ANALYSIS

### A.  Rule 23(a) Requirements

Although parties in this case have agreed to certify the proposed class solely for purposes of the Settlement, "the court must nevertheless undertake the Rule 23 inquiry independently, both at this stage and at the later fairness hearing." *Van Lith v. iHeartMedia + Ent., Inc.*, 2017 WL 1064662, at *6 (E.D. Cal. Mar. 20, 2017) (quotation and citations omitted).  The Court addresses each of the Rule 23(a) and Rule 23(b) factors in turn.

#### 1.  Numerosity

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Plaintiff's class definition, which includes forty-eight (48) individuals who legally resided in California, applied for and were denied membership with Defendant from June 1, 2020 through June 1, 2022 using a "work only" Social Security Number, adequately identifies a distinct and presently ascertainable groups of people.  *See Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 206 (E.D. Cal. 2015).  The proposed class is sufficiently numerous.  *See Boyd v. Bank of Am. Corp*. 300 F.R.D. 431, 437 (C.D. Cal. Jun. 27, 2014) (the numerosity requirement is "presumptively satisfied" if "there are at least forty members") (citing *Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 456 (C.D. Cal. 2012)).  Thus, the proposed class is sufficiently numerous.

#### 2.  Commonality

The commonality prerequisite is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Even a single common question that resolves a central issue will be sufficient. *Castillo v. Bank of America, NA*, 780 F.3d 723, 728 (9th Cir. 2020).  The key inquiry is whether the common contention is of "a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is

central to the validity of each one of the claims in one stroke.'" *Id.*; *Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013). Here, the key issue in the case is common to the class: whether Defendant's policy to deny a personal loan and membership when only a "work only" Social Security Number is provided intentionally discriminates against applicants who are not United States citizens or Lawful Permanent Residents. Commonality is satisfied.

### 3. Typicality

Typicality requires the plaintiff's claims be typical of those of class. Fed. R. Civ. P. 23(a)(3). A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of absent class members." *Castillo*, 980 F.3d at 729 (quoting *Hanlon*, 150 F.3d at 1020). Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982). Here, Plaintiff and the putative class members were all legally residing in California, applied for membership to Valley First using a "work only" Social Security Number, and were denied membership because they were not a United States citizen. Typicality is satisfied.

### 4. Adequacy of Representation

Adequacy of representation requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the plaintiff and class counsel do not have any conflicts of interest with any other class members and will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020. Adequacy is also met when the class representative "possess[es] the same interests and suffer[s] the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citations and quotation marks omitted). Here, there does not appear to be any conflicts of interest between Plaintiff and the purported class members. Additionally, Plaintiff has the same interests and suffered from the same injury as the purported class members. Class counsel has extensive experience in class actions and complex litigation, including many civil rights cases (*See* Doc. No. 23-1 at 2-3 ¶ 4-5, 4 ¶ 9, 5 ¶ 11), there is no evidence of any potential conflicts, and they have prosecuted the action swiftly on behalf of the class. (*See* docket). Accordingly, Plaintiff and her counsel appear to be adequate representatives of the proposed

1 class.

2       Thus, Plaintiff has met all the requirements of Rule 23(a).

### B. Rule 23(b) Requirements

In addition to satisfying Rule 23(a)'s prerequisites, a plaintiff seeking class certification must show that the action is maintainable under Rule 23(b). *In re Hyundai and Kia Fuel Economy Litigation*, 926 F.3d 539, 558 (9th Cir. 2019). Here, Plaintiff proceeds under Rule 23(b)(3), which requires that she show that class issue predominates and that a class action is superior to other methods of resolution. *Id.*; Fed. R. Civ. P. 23(b). Predominance requires more than proof of common issues of law and fact. Rather, the common questions should "present a significant aspect of the case and ... be resolved for all members of the class in a single adjudication." *In re Hyundai and Kia Fuel Economy Litigation*, 926 F.3d at 557, quoting *Hanlon*, 150 F.3d at 1022. Thus, "a central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy." *Vinole v. Countrywide Home Loans*, 571 F.3d 935, 944 (9th Cir. 2009). Superiority requires a showing of utility of concentrating the action in one forum and whether individual class members' have a desire to bring individual actions.

Here, a single adjudication would resolve the central issue of the case—namely, whether Defendant's membership criteria policies intentionally discriminate against applicants who are not United States citizens or Lawful Permanent Residents in violation of 42 U.S.C. § 1981 and the Unruh Act. Judicial economy would be served by resolving this issue on a class-wide basis. Accordingly, Plaintiff has satisfied both requirements of Rule 23(b)(3).

### C. Rule 23(e) Requirements

Class settlements must be fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). When the settlement takes place before formal class certification, as it has here, the settlement requires a "higher standard of fairness." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2021) (quoting *Hanlon*, 150 F.3d at 1026). This "more exacting review" of pre-certification class settlements is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to

represent." *Lane*, 696 F.3d at 819; *see Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). At the preliminary approval stage, the Court analyzes both the procedural and substantive components of the settlement. *Criswell*, 2021 WL 4461640, at *3 (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).

### 1. Settlement Process

When reviewing the settlement process, the Court considers whether the agreement appears to be the product of arms-length negotiations, and not the result of collusion or fraud. Fed. R. Civ. P. 23(e)(2)(B); *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012)). While mediation supports the conclusion that the settlement was not the product of collusion, the presence of a mediator, on its own, is not dispositive of whether the settlement agreement is fair, adequate, and reasonable. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 948 (9th Cir. 2011); *Martinelli v. Johnson & Johnson*, 2022 WL 4123874, at *4 (E.D. Cal. Sept. 9, 2022) (citing *Palacious v. Penny Newman Grain, Inc.*, 2015 WL 4078135, at *8 (E.D. Cal. Jul. 6, 2016)).

Here, over the span of six months, the Parties exchanged informal discovery and engaged in negotiations. (Doc. No. 23 at 6:6, 14:2-14). The settlement negotiations were based on the exchanged informal discover which included Defendant's membership application and loan records, copies of policies and procedures, the number of potential class members, and comparative settlements approved by the Northern District of California in similar class action cases. (*Id*. at 14:2-14, Doc. No. 23-2 at 6 ¶ 13). The proposed class counsel's fees were not part of the settlement negotiations. (Doc. No. 23 at 14:21-23). Also, part of the settlement negotiations was the eventual agreement that all costs would be paid by Defendant separate from the Settlement Fund. (*Id*. at 14:23-24). Such an agreement was contrary to Defendant's initial position who wanted the payment of all costs to come from the Settlement Fund. (*Id*.). Additionally, proposed class counsel initially demanded full payment of the potential damages to class members, which would equate to $4,000.00 individual payments to each class member. (*Id*. at 13:20-23, 14:14-15). Finally, after evaluating the strengths and weaknesses of the case, including a possible defense that the Civil Rights and Unruh Acts do not apply to discrimination

based on immigration status, the parties reached a settlement. (*Id*. at 14:15-19). Given this background, the settlement process appears procedurally fair. While there was no motion practice or formal discovery, the parties are not to be faulted for their cooperation and desire to swiftly resolve the matter given the uncertainty caused by relevant pending appeals (*See Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668 (9th Cir. 2021); *General Atomics v. Superior Court*, 64 Cal. App. 5th 987 (2021)).

### 2. Range of Possible Approval

To evaluate whether a settlement falls within the range of possible approval, "courts consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Rodriguez v. Danell Custom Harvesting, LLC*, 293 F. Supp. 3d 1117, 1131 (E.D. Cal. 2018) (citations omitted); *see Campbell*, 951 F.3d. at 1123 ("settlement's benefits must be considered by comparison to what the class actually gave up by settling"). Plaintiff estimates that the maximum recovery in this case might be individual payments of $4,000.00 for each class member, which, based upon the number of class members, would result in a total of $192,000.00 in the Settlement Fund. (Doc. No. 23 at 13:20-22). Had the case continued, Plaintiff states, Defendant would have argued the Civil Rights and Unruh Act do not apply to discrimination based on immigration status. (*Id*. at 14:15-17). Plaintiff represents that her claims for discrimination are relatively novel theories with numerous unsettled issues. (*Id*. at 13:18-19). Thus, given the novelty of Plaintiff's claims and Defendant's likely argument that neither the Civil Rights nor Unruh Act apply to discrimination based on immigration status, there is risk in this litigation going forward.

The $2,500.00 individual payment to each class members represents approximately 62% of the total estimated liability. (*Id.* at 13:20-23). Given the considerations above, the Court finds the settlement is within in the range of possible approval.

### 3. No Obvious Deficiencies

The Court next "considers whether there are any obvious deficiencies with the proposed settlement." *Van Lith*, 2017 WL 1064662, at *17 (quoting *Pierce v. Rosetta Stone, Ltd.*, 2013 WL 1878918, at *5 (N.D. Cal. May 3, 2013)).

The one potential deficiency obvious to the Court is the attorney's fees and costs provisions. Particularly in pre-certification settlements, the district "is required to search for 'subtle signs' that plaintiff's counsel has subordinated class relief to self-interest." *Kim*, 8 F.4th at 1179 (quoting *In re Bluetooth*, 654 F.3d at 947); *see also Briseño*, 998 F.3d at 1024-25. Possible signs of shortchanging the class include: (1) class counsel's receipt of a disproportionate distribution of the settlement or a handsome fee and minimal monetary class recovery, (2) a "clear sailing" provision under which defendant agrees not to object to the attorneys' fees sought or payment of fees are made separate from class funds, and (3) an agreement that fees not awarded will revert to the defendant, not to the class fund. *Kim*, 8 F.4th at 1180; *In re Bluetooth*, 654 F.3d at 947.

Here, there is evidence of a clear sailing provision because Defendant agrees not to object to Plaintiff's fee request of up to $50,000.00. (Doc. No. 23-2 at 9 ¶ 11(d)(i)). Clear sailing provisions are not prohibited nor are they "fatal to final approval[;]" however, the existence of such a provision requires the court to investigate the provision of a settlement agreement with heightened scrutiny. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 948 -49 (9th Cir. 2011) (citing *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.3d 518, 525 (1st Cir. 1991)); Swain v. Anders Group, 2023 WL 2976368, at *10 (E.D. Cal. Apr. 17, 2023) (citing *In re Bluetooth*, 654 F.3d at 948; *In re Toys R Us-Delaware Inc.- Fair and Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014)); *see also McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610 (9th Cir. 2021). Accordingly, as pointed out in the September 26, 2023 Order, the Court's stated its concern that the initial motion for preliminary approval of class action settlement did not discuss the length or amount of discovery, whether discovery adequately informed parties of the strength and weakness of their respective cases, and the estimates of proposed class counsel's fees and costs. (*See* Doc. No. 22 at 4-6). Because of these concerns, the Court denied, without prejudice, the initial motion for preliminary approval of class action settlement. (*Id.*).

As discussed supra, the Parties engaged in six months of negotiations and exchanging informal discovery which included Defendant's membership application and loan records, copies

of policies and procedures, information to ascertain the number of potential class members. Plaintiff also learned of a potential serious defense, that the Civil Rights and Unruh Acts do not apply to discrimination based on immigration status. Such additional information alleviates some of the Court's concerns surrounding the clear sailing provision. *See Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. May 14, 2013) ("approval of a class action is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases.") (citation omitted).

Proposed class counsel also estimates that its attorneys' fees will not exceed $36,000.00. (Doc. No. 23 at 9:23-24). These attorneys' fees will be paid by Defendant separate from the Settlement Fund. (Doc. No. 23 at 9:20-21; Doc. No. 23-1 at 7 ¶ 20). Thus, if requested attorneys' fees reach the estimated $36,000 benchmark, the fees will equate to 30% percent of the Settlement Fund. *See In re Bluetooth*, 654 F.3d at 942, 943 ("Several courts have embraced the constructive common fund approach, warning that 'private agreements to structure artificially separate fee and settlement arrangements' should not enable parties to circumvent the 25% benchmark requirement on 'what is economic reality a common fund situation.'") (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55. F.3d 768, 821 (3d Cir. 1995); citing *Johnston v. Comerica Mortg. Corps.*, 83 F.3d 241, 246 (8th Cir. 1996)); *see also Taylor v. FedEx Freight, Inc.*, 1:13-cv-002237-DAD-BAM, 2016 WL 6038949, at *5 (E.D. Cal. Oct. 13, 2016) ("[p]ercentage awards of between twenty and thirty percent are common"); *see also* Newberg on Class Actions § 15:83 (2021) ("An earlier edition of the Treatise reported that (then-available) empirical studies showed that fee awards in class actions average around one-third of the recovery, a statement quoted by many courts.[] More recent empirical data on fee awards demonstrate that percentage awards in class actions are generally between 20–30%,[] with the average award hovering around 25%"). Thus, proposed class counsel's estimated attorneys' fees appear to be within the acceptable range; however, the Court will reserve ruling on proposed class counsel's attorneys' fees until a motion for attorneys' fees is filed.

////

////

### 4. Preferential Treatment

#### a. Allocation of Payments

The settlement provides that each class member will receive individual payments in the amount of $2,500.00. (Doc. No. 23-2 at 10 ¶ 11(d)(iv)). The payment will be by check and will be mailed to each class member at his or her last known address. (*Id.*; Doc. No. 23 at 8:23-26). Each class member will receive the same $2,500.00 payment. (Doc. No. 23-2 at 10 ¶ 11(d)(iv)). Each class member suffered the same injury and will receive a uniform payment. Moreover, the statutory penalties under the Unruh Act do not vary with respect to each class member. (Doc. No. 23 at 13: 20-23); *see also* Cal Civ. Code § 52(a). Thus, this is an equitable and reasonable method of allocating class members' payments. *Cf. Vu v. Fashion Institute of Design & Merchandising*, 2016 WL 6211308, at *3 (C.D. Cal. Mar. 22, 2016) (denying preliminary approval of settlement agreement because class members received uniform payment despite statutory penalties varying widely with respect to each class member).

#### b. Service Award

Discretionary, service awards are "fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "'Incentive awards typically range from $2,000.00 to $10,000.00,' and '[higher] awards are sometimes given in cases involving much larger settlement amounts.'" *Sanders v. LoanCare, LLC*, No. 2:18-cv-09376-SJO (RAOx), 2019 WL 12340195, at *12 (C.D. Cal. Sept. 16, 2019) (quoting *Bellinghausen*, 306 F.R.D. at 266-67). Such awards are intended to compensate the plaintiff for work performed on behalf of the class and to make up for financial or reputational risk. *Roes, 1-2 v. SFBC Management, LLC*, 944 F.3d 1045, 1057-58 (9th Cir. 2019). A plaintiff must provide the necessary information needed for the court to evaluate his or her incentive award. *Crump v. Hyatt Corp.*, 2022 WL 2239835, *5 (N.D. Cal. Jun. 17, 2022) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). There is no precise method for calculating the amount of an appropriate service award; such awards are intended to compensate the plaintiff for work performed on behalf of the class and to make up for financial or reputational risk. *Roes, 1-2 v. SFBC Management, LLC*, 944 F.3d 1045, 1057-58 (9th

Cir. 2019). When evaluating incentive awards, courts may also consider general or specific evidence of potential workplace retaliation or reputational risk. *See, e.g., Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003); *Arredondo v. Southwestern & Pacific Specialty, Inc.*, 2022 WL 2052681, at * 2-3 (E.D. Cal. Jun. 7, 2022).

Proposed class counsel will seek a $5,000.00 service award for Named Plaintiff Ayala. (Doc. No. 23 at 15:3-4; Doc. No. 23-2 at 9 ¶ 11(d)(ii)). The service award will be paid by Defendant separate from the Settlement Fund. (Doc. No. 23-1 at 7 ¶ 20, Doc. No. 23-2 at 5 ¶ 1(s)). Plaintiff assisted with investigating the case, provided background information, reviewed the pleadings, kept in contact with proposed class counsel through email and phone calls, and reviewed the terms of the settlement agreement. (Doc. No. 23 at 15:23-25, Doc. No. 23-1 at 7 ¶ 22). Furthermore, by being the Named Plaintiff, Ayala put herself at risk by publicizing her non-permanent immigration status. (Doc. No. 23 at 15:25-26; Doc. No. 23-2 at 7-8 ¶ 23). Although the Court will determine the specific amount to be awarded to Named Plaintiff Ayala at the final approval, the service award request does not establish preferential treatment that would prevent preliminary approval.

### D. Notice to Class Members

If the court determines it will likely be able to approve the settlement and certify the class for settlement purposes, it must direct notice to class members who will be bound by the settlement. Fed. R. Civ. P. 23(e)(1)(B). In terms of content, "[t]he notice must clearly and concisely state" the following "in plain, easily understood language": (1) "the nature of the action;" (2) "the definition of the class certified;" (3) "the class claims, issues, or defenses;" (4) "that a class member may enter an appearance through an attorney if the member so desires;" (5) "that the court will exclude from the class any member who requests exclusion;" (6) "the time and manner for requesting exclusion;" and (7) "the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). As modified, the Long and Short Form Notices meet each of these standards. (Doc. No. 23-4 at 2-9, Doc. No. 23-5 at 2). However, minor errors remain with the proposed notice:

- On page 6 paragraph 18 on the revised Long Form Notice it states that the Final

    Approval or Fairness Hearing will take place at "Yosemite Courthouse, which is located in Yosemite National Park at 9004 Castle Cliffs Court, Yosemite Valley, CA 95389." It should read that the Final Approval or Fairness Hearing will take place at "the U.S. District Court for the Eastern District of California, 2500 Tulare Street, Fresno, CA 93721 in Courtroom 6."

- The reference to "Directions to the Courthouse can be found on its website: https://www.caed.uscourts.gov/caednew/assets/File/yosemite%20directions.pdf" should be removed. (*See* Doc. No. 23-4 at 7).

- On the revised Short Form Notice in paragraph 2 following the second numerical explaining class counsel's request for attorney's fees, a third numerical should be added stating "whether to approve a $5,000.00 service award for the Named Plaintiff."

- The third numerical which discusses the costs for the settlement administrator should be renumbered to number "4." (*See* Doc. No. 23-5 at 2).

  Where, as here, the parties propose to certify a class under Rule 23(b)(3), notice must be the best as "practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Before initially mailing the notice, the settlement administrator will make a good-faith attempt to obtain up-to-date names and mailing addresses for potential class members, including (1) cross-checking the names and addresses for each individual class member as provided by the Defendant; and (2) cross-checking the each last known mailing address with the National Change of Address Registry. (Doc. No. 23-2 at 6 ¶ 5(b)). In the event that a mailed notice is returned, the settlement administrator will remail the notice using the forwarding address. (*Id.*). If a notice is returned as undeliverable then the settlement administrator will use standard skip tracing devices to obtain a forwarding address and remail the notice according. (*Id.*). Further, the settlement provides for a website to be maintained for the benefit of class members. (Doc. No. 23-2 at 7 ¶ 6(g)). This proposed notice plan is sufficient.

  ////

**CONCLUSION**

For the reasons provided herein, the Court **ORDERS** the following:

(1) Plaintiff's Renewed Motion for Preliminary Settlement Approval (Doc. No. 23) is GRANTED.

(2) The Court conditionally certifies the following Settlement Class pursuant to Federal Rule of Civil Procedure 23 for settlement purposes only in accordance with the terms of the Settlement Agreement as follows:

> the 48 individuals, who, according to Defendant's records, were legally residing in California and applied for membership with Defendant from June 1, 2020 through June 1, 2022 using a 'work-only' social security number and were denied membership based solely on their lack of U.S. citizenship.

(3) For settlement purposes only, Plaintiff's counsel, the Mexican American Legal Defense and Educational Fund, are APPOINTED as class counsel.

(4) For settlement purposes only, Plaintiff Karla Ayala, is APPOINTED as the class representative.

(5) The Court preliminarily APPROVES the settlement as fair, reasonable, and adequate. The Court will evaluate the requested attorney's fees, costs, incentive award, and settlement administrator's costs at Final Approval.

(6) The method of Notice to the Class Members, (*see* Doc. No. 23-2 at 6 ¶ 5), is APPROVED.

(7) RG2 Claims Administration, LLC is APPROVED to serve as the neutral, third-party Settlement Administrator in accordance with the Settlement Agreement and consistent with this Order.

////

////

The Court further **ORDERS** the following schedule for this matter:

(1) No more than **five (5) calendar days after entry of this Order**, Plaintiff shall further revise the proposed class notice consistent with this Order and resubmit it to the Court for approval.

(2) No more than **twenty (20) calendar days after entry of this Order**, Defendant shall provide the Settlement Administrator with the last known mailing address for the class members for purposes of sending the Notice to the Settlement Class members. (Doc. No. 23-2 at 6 ¶ 5(b)).

(3) No more than **twenty (20) business days after receipt of the Class Information**, the Settlement Administrator shall send a copy of the Notice, also referred to as the Short Form Notice, by U.S. first class mail to each potential class member. Before the initial mailing of the Notice, the Settlement Administrator shall make a good-faith attempt to obtain the most-current names and postal mail addresses, including by using the means identified in the settlement agreement. The Settlement Administrator shall also ensure by this date that the settlement website is "live." (Doc. No. 23-2 at 6 ¶ 5(b)).

(4) Any request for exclusion ("opt-out") or written objection to the settlement must be mailed to the Settlement Administrator at the address provided in the Class Notice and must be postmarked **no later than forty-five (45) days after the Notice date or fifteen (15) calendar days after remailing of a Settlement Class member's Notice, whichever is later.** (Doc. No. 23-2 at 4 ¶¶ 1(a),(b); 8 ¶ 7).

(5) Plaintiff shall file any final approval motion, along with all objections sent to the Settlement Administrator, and any motion for attorney's fees and costs and Named Plaintiff incentive award, by **no later than 28 calendar** days before the Final Hearing Date. The briefing should include information about the number of undeliverable class notices, the number of class members who elected to opt out of the class, the number of class members who objected to or commented on the settlement, and reasonable estimates of the highest, lowest, and median individual settlement payments. It should also respond to any objections; and

(7) The Court shall hold a hearing regarding final certification of the class and final approval of the settlement on **Thursday, March 7, 2024 at 1:00 p.m. in Courtroom 6 at the U.S. District Court, Eastern District of California, 2500 Tulare Street, Fresno, CA.** The Court reserves the right to adjourn or continue the date of the Final Approval Hearing and all dates provided for in the Settlement Agreement without further notice to Settlement Class Members

and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

Dated: November 8, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE