1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KARLA AYALA,                              Case No.  1:22-cv-00657-HBK
     *an individual, on behalf of herself and all*
12   *others similarly situated*,               ORDER GRANTING PLAINTIFF'S
                                                UNOPPOSED MOTION FOR FINAL
13                        Plaintiffs,           APPROVAL OF CLASS ACTION
                                                SETTLEMENT[1]
14             v.
                                                (Doc. No.  32)
15   VALLEY FIRST CREDIT UNION,
                                                ORDER GRANTING PLAINTIFF'S
16                        Defendant.            UNOPPOSED MOTION FOR ATTORNEY'S
                                                FEES, COSTS, AND SERVICE AWARD
17
                                                (Doc. No.  31)
18

19

20        Before the Court is Plaintiff Karla Ayala's ("Plaintiff" or "Ayala") Motion for Final

21   Approval of Class Settlement and Motion for Attorney's Fees, Costs, and Service Award, both

22   filed on February 8, 2024.  (Doc. Nos. 31-32).  Filed in support is the declaration of class counsel

23   Luis L. Lozada (Doc. No. 31-1), and the declaration of Dana Boub, project manager for RG/2

24   Claims Administration LLC ("RG2") the Settlement Administrator (Doc. No. 32-1).  Notably, no

25   declaration from Plaintiff Karla Ayala attesting to the work she performed is attached.   On March

26   7, 2024, the Court held a hearing on Plaintiff's Motion.  (Doc. No. 34).  Attorney Luis Lozada

27   ───────────────────────

28   [1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C.
     §636(c)(1).  (Doc. No. 20).

appeared on behalf of Plaintiff and Attorney Stuart Matthew Richter appeared on behalf of Defendant.  (*Id*.).  Neither the class representative Ms. Ayala, nor any other class members appeared.  (*Id*.).  No objectors appeared.  Defendant raised no opposition to the Motion at the hearing.  (*Id*)  Having considered the moving papers, as well as the Court's file, the Court grants the Motions to the extent set forth herein.

## BACKGROUND

The Court's previous Order Granting Preliminary Approval described the history of this action in some detail.  (Doc. No. 25).  The Court briefly summarizes the pertinent matters here.

Plaintiff filed the present action on June 1, 2022.  (Doc. No. 1).  Asserting subject matter jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367, Plaintiff brings this action alleging claims of alienage discrimination in violation of the Civil Rights Act of 1966, 42 U.S.C. § 1981, and California Civil Code §§ 51, et seq., also known as the Unruh Civil Rights Act ("Unruh Act").  (*Id*. at 2).  Plaintiff's claims are based on Valley First Credit Union ("Defendant" or "Valley First") denying her a personal loan and membership to Valley First because she could provide a "work only" Social Security Number.  (*Id*. at 3-5, 7-9; Doc. No. 14 at 5-6).  Plaintiff contends that Valley First intentionally discriminates against applicants who are not United States citizens or Lawful Permanent Residents with policies to deny membership to such applicants.  (Doc. No. 1 at 7-9).  Plaintiff asserts that Defendant's policies violate 42 U.S.C. § 1981 and the Unruh Act.  (*Id*.).  Plaintiff brought the action on behalf of herself and the class composed of "[a]ll persons who attempted to apply for membership or a financial product from Valley First but were denied full and equal consideration by Valley First on the basis of their alienage or immigration status."  (*Id*. at 5).

On December 5, 2022, the parties filed a joint notice of settlement.  (Doc. No. 11). Plaintiff filed an unopposed motion for preliminary approval of the settlement on February 13, 2023, which was denied without prejudice subject to a renewed motion correcting and/or clarifying the identified deficiencies.  (Doc. Nos. 14, 22).  On October 3, 2023, Plaintiff filed a renewed unopposed motion for preliminary settlement approval, which was granted on November 8, 2023.  (Doc Nos. 23, 25).  The Court appointed Ayala as the Class Representative, and

1  appointed the Mexican American Legal Defense and Educational Fund as Class Counsel.  (Doc.

2  No. 25 at 18).   Finally, the Court appointed  RG2 Claims Administration, LLC as the Settlement

3  Administrator.  (*Id*.).

4      On February 8, 2024, Plaintiff filed a motion for attorney's fees and costs, a service award

5  for Plaintiff as the Class Representative, and settlement administration costs.  (Doc. No. 31).  On

6  the same day, Plaintiff filed a motion for final approval of the settlement.  Defendant filed a

7  statement of non-opposition to the motion for final settlement approval but filed no opposition to

8  tor statement on non-opposition to the motion for attorney's fees and costs.  (Doc. No. 33).

9  Nonetheless, Defense Counsel represented that Defendant had no opposition to the attorney fees,

10  administrative costs, or service award at the hearing.

11                  **PROPOSED SETTLEMENT TERMS**

12  **1.      Rule 23 Settlement Class**

13      The proposed Settlement Class is identified as:

14          the 48 individuals who, according to Defendant's records, were
            legally residing in California and applied for membership with
15          Defendant from June 1, 2020 through June 1, 2022 using a "work
            only" social security number and were denied membership based
16          solely on their lack of U.S citizenship.

17  (Doc. No. 23-2 at 4 ¶ 1(d)).  There are 48 members in the Settlement Class.  (*Id*.).

18  **2.      Releases**

19      The Settlement Class is releasing the claims asserted in this suit:

20          Except as to the rights and obligations provided for under the terms
            of this Agreement, Named Plaintiff, on behalf of herself and each
21          Class Member who does not opt-out (collectively, "Defendant
            Releasors"), hereby release and forever discharges Defendant, and
22          all of its past, present and future predecessors, successors, parents,
            subsidiaries, divisions, employees, affiliates, assigns, officers,
23          directors, shareholders, representatives, attorneys, insurers, and
            agents (collectively, the "Defendant Releases") from any and all
24          losses, fees, charges, complaints, claims, debts, liabilities, demands,
            obligations, costs, expenses, actions, and causes of action of every
25          nature, character, and description, whether known or unknown,
            asserted or unasserted, suspected or unsuspected, fixed or
26          contingents, which Defendant Releasors now have, own or hold
            against any of the Defendant Releasees that arise out of and/or relate
27          to the facts and claims alleged in the Complaint, including any claims
            relating to the Challenged Practice.
28

                                  3

(*Id*. at 10 ¶ 13). In addition, Plaintiff provides a release of all known and unknown claims under California Civil Code § 1542:

> Defendant Releasors acknowledge that there may be facts and claims about which Defendant Releasors are presently not aware. Defendant Releasors nevertheless agree to waive and release and do waive and release all such claims that are not known or suspected at the time of executing this Settlement Agreement that if known might, or would have, materially affected Named Plaintiff's decision to enter into this Settlement Agreement, or might have materially affected a Class Member's decision to opt-out of the Settlement Class or to object to this Settlement Agreement. Named Plaintiff shall be deemed to have expressly waived and fully, finally, and forever settled and released any and all such unknown claims against Defendant Releasees, whether or not concealed or hidden, without regard to subsequent discovery or existence of different or additional facts, and benefits of any statute or principle of common law similar to California Civil Code Section 1542, which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIAL AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(*Id*. at 10-11 ¶ 14).

### 3.   Gross and Net Settlement Amounts

#### a.   Gross Settlement Amount

The gross settlement amount in the Settlement Fund is $120,000.00.  (Doc. No. 32 at 11; Doc. No. 23-2 at 5 ¶ 1(s)).  No portion of the Gross Settlement Amount will be retained by or revert to Defendant.  (Doc. No. 23-2 at ¶ 11(e)).

#### b.   Attorney's Fees and Costs

Class counsel seek $30,000.00 for attorney fees, which is 25% of the gross settlement amount.  (Doc. No. 31 at 8).  Class counsel also seeks reimbursement of litigation costs in the amount of $402.00.  (*Id*. at 23-24).

#### c.   Incentive Payment

In addition to her payment under the settlement agreement, Plaintiff Ayala seeks an incentive award of $5,000.  (*Id*. at 24-25).  The incentive award will not be paid from the

Settlement Fund, and will be paid by Defendant. (Doc. No. 32 at 11; Doc. No. 23-2 at 5 ¶1(s)).

### d.   Settlement Administrator Costs

Plaintiff requests approval of $10,000.00 in costs to Settlement Administrator RG2 Claims Administration,, LLC, to be paid by Defendant.  (Doc. No. 31 at 25-26; Doc. No. 23-2 at 9-10 ¶11(d)(iii)).

### e.   Estimate of Net Settlement Amount

Each member of the Settlement Class will receive an individual payment of $2,500.00. (Doc. No. 32 at 13; Doc. No. 23-2 at 5 ¶ 1(l), 10 ¶ 11(d)(iv)).  Individual settlement payments will be paid by checks made payable and mailed to each class member.  (*Id.*).

### f.   Cy Pres

If any individual settlement payments to class members remain uncashed one hundred fifty (150) days after the check is issued by the settlement administrator, they will be paid to the *cy pres* recipient, Immigrants Rising, a California-based non-profit.  (Doc. No. 23 at 8-9; Doc. No. 23-2 at 9-10 ¶ 11(d)(iv), 12).  Immigrants rising "provides scholarships and financial resources to undocumented immigrants and, specifically, DACA recipients."  (Doc. No. 23 at 9). Immigrants Rising does substantial work in the Central Valley, the region of California where the class members are located.  (*Id.* at 17).

### g.   Corrective Action

As a part of the Settlement Agreement, Defendant has ceased the "Challenged Practice," and unless required by law, rules, or regulations, it will not deny applicants membership based solely on their alienage or lack of U.S. citizenship.  (Doc. No. 32 at 11; Doc. No. 23-2 at 5 ¶ 2). Defendant has changed its underwriting policies to allow applicants to be evaluated for loan and other credit products on the same terms as a U.S. citizen or lawful permanent resident applicant. (Doc. No. 32 at 8).

### APPLICABLE LAW

"Courts reviewing class action settlements must ensure[] that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is

concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quotations and citations omitted). Where parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003).

The Court first determines whether, in its discretion, a class action may be certified. *Id.; Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1041 (9th Cir. 2012). Exercise of this discretion "demand[s] undiluted, even heightened, attention in the settlement context." *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 620 (1997). This level of attention "is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

To obtain class certification, the plaintiff must affirmatively demonstrate that the class meets the requirements of Rule 23. *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 350 (2011). The plaintiff must satisfy the four prerequisites identified in Rule 23(a), as well as one of the three subdivisions of Rule 23(b). *Amchem Prods., Inc.,* 521 U.S. at 614. "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.,* 593 F.3d 802, 806 (9th Cir. 2010). Certification under Rule 23(b)(3) is appropriate where common questions of law or fact predominate and class resolution is superior to other available methods. Fed. R. Civ. P. 23(b)(3).

Second, after determining that a class may be certified, the district court carefully considers "whether a proposed settlement is fundamentally fair, adequate, and reasonable," recognizing that "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citations omitted); *see* Fed. R. Civ. P. 23(e)(2). Where, as here, a settlement has been reached prior to formal class certification, "a higher standard of fairness" applies due to "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class

representative." *Id.* at 1026; *see Campbell*, 951 F.3d at 1122.  Although the court's role in reviewing a proposed settlement is critical, it is also a limited one.  The court does not have the ability to "'delete, modify, or substitute certain provisions.'  The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026 (citation omitted).

When evaluating fairness, adequacy, and reasonableness of a class action settlement at the final approval stage, the Court considers a number of factors, often referred to as either the *Hanlon* or *Churchill* factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Kim v. Allison*, 8 F.4th 1178 (9th Cir. 2021).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

**ANALYSIS**

**1.**     **Final Certification of Class Action**

At the preliminary approval stage, the Court analyzed each of the Rule 23(a) and Rule 23(b) factors and concluded Plaintiff had satisfied each.  The record on final approval reflects the same or substantially similar information as already provided and analyzed at the preliminary approval stage.  No additional substantive issues regarding the certification have been raised.  Thus, the Court sees no reason to change its analysis regarding the appropriateness of certification of the class for settlement purposes and finds Plaintiff has met all requirements under Rules 23(a) and 23(b). *See, e.g., Harris v. Vector Marketing*, 2012 WL 381202, at *3, *7 (N.D. Cal. Feb. 6, 2012) ("the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [Thus, it] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable.").  The Court finds final certification is appropriate.  The following class is therefore certified as set forth in the Settlement

Agreement:

> the 48 individuals who, according to Defendant's records, were legally residing in California and applied for membership with Defendant from June 1, 2020 through June 1, 2022 using a "work only" social security number and were denied membership based solely on their lack of U.S citizenship.

(Doc. No. 23-2 at 4 ¶ 1(d)).  In addition, Plaintiff Karla Ayala is confirmed as class representative; the Mexican American Legal Defense and Educational Fund is confirmed as class counsel; and RG2 Claims Administration, LLC is confirmed as settlement administrator.

**2.**    **Final Approval of Class Action Settlement**

Class actions require the approval of the court prior to settlement.  Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with court's approval.").  This requires that: (i) notice be sent to all class members; (ii) the court hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) the parties seeking approval file a statement identifying the settlement agreement; and (iv) class members be given an opportunity to object.  Fed. R. Civ. P. 23(e)(1)-(5).  The settlement agreement was previously filed on the court docket.  (Doc. No. 23-2).  The Court now considers the adequacy of notice and review of the settlement following the final fairness hearing.

**A.  Notice**

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class.  Fed. R. Civ. P. 23(c)(2)(B).

The Court previously found the form of notice sufficient.  (*See* Doc. Nos. 25-28).  Following approval of the notice, Defendant sent RG2 the settlement class list of 48 individuals and, after processing the class list against the National Change of Address database, RG2 mailed

the Notice Packet (Doc. No. 32-3, Exhibit B) in English and Spanish via First Class U.S. Mail  to

all 48 class members on December 6, 2023.  (Doc. No. 32 at 12; Doc. No. 32-1 at 2 ¶ 4-6).  The

Notice informed members of the Settlement Class that, if approved, they might be entitled to

receive $2,500.00 from a total settlement fund of $120,000.00.  (Doc. No. 32-3, Exhibit B).

Settlement Class members were also informed that the Court would be considering whether to

award class counsel less than $50,000.00 in attorney's fees with estimated costs of $500.00,

whether to award Plaintiff Ayala an incentive payment of $5,000.00, and whether to award

settlement administrator estimated to be $10,000.  (*Id.*).  After performing skip tracing on

two undeliverable Notice Packets, zero notices have been deemed undeliverable.  (Doc. No. 32 at

12-13, No. 32-1 at 3 ¶ 7).  RG2 received no requests for exclusions and no objections to the

settlement.  (Doc. No. 32 at 13, No. 32-1 at 3 ¶ 8-9).

Finally, under the Class Action Fairness Act ("CAFA"), within 10 days after a proposed

settlement of a class action is filed in court, the settling defendant is required to serve certain state

and federal officials with a settlement notice.  28 U.S.C. § 1715(b).  The Court is satisfied with

the notification provision set forth in the settlement agreement.  (Doc. No. 23-2 at 7-8 ¶ 6(i)).

RG2 served CAFA notices on the relevant federal and state attorneys general on February 22,

2023.  (Doc. No. 32-1 at 2 ¶ 2-3).  Class counsel confirmed that no state or federal officials have

responded to the CAFA Notice at the final hearing.

The Court accepts the report of the settlement administrator, and finds adequate notice

was provided to settlement class members.  Rule 23(e)(1); *Churchill Vill., L.L.C. v. Gen. Elec.*,

361 F.3d 566, 575 (9th Cir. 2004).

**B.  Fairness, Adequacy, and Reasonableness of the Settlement**

Class actions require the approval of the court prior to settlement and a finding that the

class settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  When the settlement

takes place before formal class certification, as it has here, the settlement requires a "higher

standard of fairness."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012)

(quoting *Hanlon*, 150 F.3d at 1026.  This "more exacting review" of pre-certification class

settlements is required to ensure that the class representatives and their counsel do not receive a

disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819; *see Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015).  At the final approval stage, a "court must show it has explored comprehensively" the eight factors identified above, "and must give a reasoned response to all non-frivolous objections." *Allen*, 787 F.3d at 1223-24 (quoting *Dennis v. Kellogg Co.,* 697 F.3d 858, 864 (9th Cir. 2012).  The Court turns to these matters.

### 1.  Strength of Plaintiff's Case

When assessing the strength of a plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of the [the] litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig*., 720 F. Supp. 1379, 1388 (D. Ariz. 1989) (the court "evaluate[s] objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements."); *Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Here, as described in the renewed motion for preliminary approval of the class settlement, Plaintiff's claims of discrimination on behalf of DACA recipients with "work only" Social Security Numbers "presents a relatively novel theory with numerous unsettled issues." (Doc. No. 23 at 13).  Valley First may argue it did not have a policy of denying membership to DACA recipients, that the members of the putative class were ineligible for membership for reasons other than immigration status, or that Defendant's actions were justified. (Doc. No. 32 at 17).  As noted the unopposed motion for preliminary approval, potential defenses to Plaintiff's claims also include an argument that the Civil Rights and Unruh Acts do not apply to discrimination based on immigration status.  (Doc. No. 23 at 14).

The Court finds that consideration of this factor thus weighs in favor of approval of the settlement.

### 2.  Risk, Expense, Complexity, and Likely Duration of Further Litigation

In the Ninth Circuit, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d at 1101 (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  As a general

matter, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004).  Thus, in analyzing this factor, the Court should compare the uncertainties of prolonged litigation with the immediate benefits that the settlement provides to the settlement class.  *Id.*

As noted by Plaintiff, in light of the above-described complexity and relatively novel nature of Plaintiff's claims, and possible defenses raised by Defendant, resolution of this case would require a "significant expenditure of resources" and delay that might result in "significant risk of no recovery, the cost of individual litigation, and delay inherent in further litigation and possible appeals."  (Doc. No. 32 at 18 (citing *Tumampos v. Cathay Pac. Airways LTD*., 2018 WL 5603702, at *5 (N.D. Cal. Sept. 21, 2018)); *see also In re Heritage Bond Litig*., 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) ("Courts have recognized that the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award.").  With this settlement, class members are ensured an immediate and definitive payment, as opposed to prolonged litigation and uncertain recovery.

Plaintiff maintains that the case is well-suited for class certification because it involves Defendant's "uniform policy of denying membership to applicants solely based on their alienage"; however, class counsel acknowledges that Defendant could argue the proposed class fails to satisfy several requirements of Rule 23, including that individual issues predominate over questions common to class, exceptions to the policy defeat commonality, and individualized differences in the applications prevent a finding of predominance.   (Doc. No. 32 at 19).

Accordingly, the Court finds the potential costs, risks, and delay associated with class certification, motion practice, trial, and appeal weigh in favor of approval of the settlement.

### 3.  Amount Offered in Settlement

To evaluate the fairness of a settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *see In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000).  Here, the proposed gross settlement amount is

11

$120,000.00.  (Doc. No. 32 at 11; Doc. No. 23-2 at 5 ¶ 1(s)).  Class members will receive individual payments of $2,500.00 (Doc. No. 32 at 13; Doc. No. 23-2 at 5 ¶ 1(l), 10 ¶ 11(d)(iv)), which amounts to over 60% of the $4,000.00 statutory damages under the Unruh Civil Rights Act for each discriminatory act.  (Doc. No. 32 at 20).  When weighed against the litigation risks identified above, the Court finds the monetary recovery is significant.  The corrective relief in this case is also significant.  Valley First has agreed to change its underwriting policies and no longer deny membership based solely on their alienage or lack of U.S. citizenship.  (Doc. No. 32 at 20; Doc. No. 23-2 at 5 ¶ 2).  "Immigrants in the Central Valley of California – not just Class Members – will potentially benefit from this Corrective Action, enabling dozens of individuals to obtain membership with Valley First."  (Doc. No. 32 at 20).

Given these considerations, the Court finds the gross settlement amount of $120,000.00 is fair, reasonable, and adequate.  This factor weights in favor of approving the settlement.

### 4.  Extent of Discovery and Stage of the Proceedings

This case was settled within approximately six months of filing.  It involved "informal and confirmatory" discovery, as well as offers and counteroffers.  (Doc. No. 32 at 21).   Informal discovery included Defendant's membership application and loan records, copies of policies and procedures, the number of potential class members, and records about Defendant's membership base to assess the merits of Plaintiff's discrimination claims.  (Doc. No. 31-1 at 6, ¶ 12).  The Court finds that class counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig*., 213 F.3d at 459.  This factor weighs in favor of approval of the settlement.

### 5.  Experience and Views of Counsel

Class counsel are experienced class action, employment law, and immigrants' rights litigators, "with a focus on representing plaintiffs in class actions and impact litigation involving discrimination."  (Doc. Nos. 31-1 at 2-5 ¶ 5-9).  They have at least 26 years of experience between them and have been appointed class counsel in numerous cases.  (*Id*. at 3-4 ¶5-8, 8-9 ¶ 28-29).  They have each concluded that settlement is in the best interests of the class.  (Doc. No. 32 at 22).  Thus, the experience and views of counsel weigh in favor of final approval of the

settlement.

### 6. Government Section

As no government entity has participated in this matter, this factor is neutral.

### 7. Reaction of the Class to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528-29.  Here, there are no objections or disputes with the settlement, and no individual class members opted out of the settlement. (Doc. No. 32 at 12-13, No. 32-1 at 3 ¶ 7-9).  No objectors appeared at the final fairness hearing held on March 7, 2024, and class counsel confirmed that no additional objections or requests for exclusion were received between filing the motion for final approval and the final fairness hearing.  The lack of objections and opt-outs weighs in favor of final approval of the settlement.

### 8. Conclusion

After consideration of the *Churchill* factors, the Court finds the settlement is fair, reasonable, and adequate under Rule 23(e), and grants final approval of the settlement.

### 3.   Attorneys' Fees and Costs, Expenses, and Incentive Award

In its unopposed motion, and consistent with the parties stipulation to allow percentage of recovery notwithstanding the settlement agreement (Doc. No. 29), class counsel seeks approval of $30,000.00 in attorneys' fees, $402.00 in costs, and $10,000.00 in settlement administration costs. (Doc. No. 31).  Class counsel also seeks a $5,000.00 service award for Karla Ayala, the named Plaintiff and class representative.  (*Id*.).

#### A.   Fees

As an initial matter, the Ninth Circuit held recently held that "Rule 23(e)(2), as revised in 2018, requires courts 'to go beyond our precedent' by accounting for the terms of any proposed award of attorney's fees when determining whether the relief provided for the class is adequate." *Miguel-Sanchez v. Mesa Packing, LLC*, No. 20-cv-00823-VKD, 2021 WL 4893394, at *5 (N.D. Cal. Oct. 20, 2021) (citing *Briseño v. Henderson*, 998 F.3d 1014, 1023-36 (9th Cir. 2021); *Kim*, 8 F.4th at 1179).  Particularly in pre-certification settlements, the district "is required to search for

13

1    'subtle signs' that plaintiff's counsel has subordinated class relief to self-interest." *Kim*, 8 F.4th

2    at 1179 (quoting *In re Bluetooth*, 654 F.3d at 947); *see also Briseño*, 998 F.3d at 1024-25.

3    Possible signs of shortchanging the class include: (1) class counsel's receipt of a disproportionate

4    distribution of the settlement or a handsome fee and minimal monetary class recovery, (2) a

5    "clear sailing" provision under which defendant agrees not to object to the attorneys' fees sought

6    or payment of fees are made separate from class funds, and (3) an agreement that fees not

7    awarded will revert to the defendant, not to the class fund. *Kim*, 8 F.4th at 1180; *In re Bluetooth*,

8    654 F.3d at 947.

9         Here, in the order granting preliminary approval of the settlement, the Court noted its

10   previous concerns about the clear sailing provision were alleviated, and the estimated attorneys'

11   fees of $36,000.00, equating to 30% of the settlement fund, appeared to be within the acceptable

12   range.  (Doc. No. 25 at 13-14).  Class counsel has since voluntarily reduced its initial fee request

13   of 30% to 25% of the gross recovery, and requested that the Court calculate attorneys' fees under

14   the percentage of recovery method.  (Doc. No. 30; Doc. No. 31 at 11).  The Court nonetheless

15   reserved ruling until the instant motion was filed and the Court could fully evaluate the

16   reasonableness of the request.  (Doc. No. 25 at 14; Doc. No. 30).

17        "In a certified class action, the court may award reasonable attorney's fees and nontaxable

18   costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Where, as

19   here, the case is brought under a fee shifting statute, such as the Unruh Act, and the relief sought

20   is arguably "primarily injunctive in nature and this not easily monetized," the Ninth Circuit has

21   directed the lodestar method for awarding attorneys' fees is appropriate. *In re Bluetooth*, 654 F.3d

22   at 941.  That said, where, as here again, "a settlement produces a common fund for the benefit of

23   the entire class," the Court has discretion to employ either the lodestar method or the percentage-

24   of-recovery method. *Id*. at 942 ("Because the benefit to the class is easily quantified in common-

25   fund settlements, we have allowed courts to award attorneys a percentage of the common fund in

26   lieu of the often more time-consuming task of calculating the lodestar.  Applying this calculation

27   method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee

28   award").  Regardless of the chosen calculation method, reasonableness of the fee is the

14

1   touchstone.  (*Id.*).

2         When evaluating the reasonableness of a percentage-based attorney's fees award, district

3   courts consider:

> (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. Additionally, district courts may cross-check the reasonableness of a percentage award by comparing it to a lodestar calculation and risk multiplier.

8   *Chavez v. Converse, Inc.*, 2020 WL 10575028, at *5 (N.D. Cal. Nov. 25, 2020) (citations and

9   internal quotation marks omitted).

10        As to the first factor, "[t]he overall result and benefit to the class from the litigation is the

11  most critical factor in granting a fee award."  *In re Omnivision Techs.*, 559 F. Supp. 2d 1036,

12  1046 (N.D. Cal. 2007); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2022)

13  ("Exceptional results are a relevant circumstance" to support an adjustment from the benchmark

14  award).  Here, the gross settlement amount of $120,000.00 will result in class members receiving

15  individual payments of $2,500.00, which, as discussed supra, amounts to over 60% of the

16  $4,000.00 statutory damages under the Unruh Civil Rights Act for each discriminatory act.  (Doc.

17  No. 32 at 20; Doc. No. 23-2 at 10 ¶ 11(d)(iv)).  Notably, attorney fees and costs will be paid by

18  Defendant, separate from the settlement fund.  (Doc. No. 31 at 15; Doc. No. 31-1 at 6 ¶ 14).

19  Finally, Plaintiff "secured the maximum degree of corrective action" as Valley First has agreed to

20  change its underwriting policies and no longer deny membership based solely on their alienage or

21  lack of U.S. citizenship.  (Doc. No. 32 at 20; Doc. No. 23-2 at 5 ¶ 2).  These favorable results

22  support the reasonableness of class counsel's request.

23        As to the second factor, "[t]he risk that further litigation might result in Plaintiffs not

24  recovering at all, particularly in a case involving complicated legal issues, is a significant factor in

25  the recovery of fees."  *In re Omnivision*, 559 F. Supp. 2d. at 1046-47; *see also Vizcaino*, 290 F.3d

26  at 1048.  As discussed above, there was a risk that further litigation on this relatively novel issue

27  would result in uncertain recovery for Plaintiffs.  In particular, as noted by Plaintiff, class counsel

28  faced the challenge of proving Defendant discriminated on the basis of alienage and/or

immigration status, overcoming substantial defenses, and difficulties certifying the class and demonstrating damages.  (Doc. No. 31-1 at 8, ¶ 25).

As to the third factor, the Court considers the skill required to litigate the action, and class counsel's overall performance.  *See In re Omnivision*, 559 F. Supp. 2d. at 1047.  Certainly class counsel are experienced litigators who timely negotiated a settlement for the settlement class.  (Doc. Nos. 31-1 at 3-4 ¶¶5-8, 8-9 ¶ 28-29).  Their familiarity with the issues, as presented in other cases, was likely valuable to the class during negotiations.  (*Id*. at 8-9 ¶ 28-29).  However, given that there was no formal discovery, no depositions, no motion practice, and no trial, the skill and work quality required in this case are not readily apparent.

As to the fourth factor, the Court considers the contingent nature of the fee and the financial burden carried by the Plaintiff.  Here, the fee was contingent, and as counsel points out, such cases do not always lead to recovery and can lead to significant unreimbursed expenses.  (Doc. No. 31 at 18-19).  Yet, there does not appear to be a serious threat of financial burden in this case.

As to fifth factor, Class counsel in the moving papers generally contends, without citation to specific cases, that class members "received the same monetary and non-monetary relief that Class counsel has achieved in other court-approved class actions, alleging the same grounds for relief."  (Doc. No. 31 at 17).  At the hearing, Class counsel acknowledged they had already settled a number of actions that included apparently similar claims.  *See e.g*., *Velasquez v. Ally Bank*, 2023 WL 3687379 (E.D. Cal. May 26, 2023) (granting preliminary approval of settlement in class action arising from alleged policy of denying access to savings and checking accounts to applicants who are not U.S. citizens or legal permanent residents, including corrective relief and $2,500 to each member of the California class); *Perez v. Discover Bank*, No. 3:20-cv-06896-SI, Doc. Nos. 116, 123 (N.D. Cal.) (granting preliminary approval of settlement in class action arising from alleged policy of denying eligibility for loan products to DACA recipients, including corrective relief and $2,500 to each member of the California class).

Given consideration of these factors, and subject to lodestar cross-check, the requested award of 25% of the settlement fund in attorneys' fees, in the amount of $30,000.00, is

reasonable.  *See Briseño*, 998 F.3d at 1024 (in both pre- and post-certification settlements, court

must "examine whether the attorneys' fees arrangement shortchanges the class"); *In re Bluetooth*,

654 F.3d at 942 ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable

fee award").

        "The lodestar figure is calculated by multiplying the number of hours the prevailing party

reasonably expended on the litigation (as supported by adequate documentation) by a reasonable

hourly rate for the region and for the experience of the lawyer." *In re Bluetooth,* 654 F.3d at 941.

Courts consider the reasonable rates for the specific geographic area and type of practice.  *See*

*Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986).  As an organization, the

MALDEF, a non-profit public interest law firm, has more than 50 years of experience litigating

class actions.  (Doc. No. 31-1 at 2, ¶ 5).  Here, class counsel's experience is varied – Attorney

Lozada is a staff attorney with 2-3 years of experience representing plaintiffs in class action

lawsuits involving similar claims, while Attorney Saenz has over 26 years of experience in

complex civil rights litigation and class actions.  (*Id*. at 3-4 ¶ 7, 8).  As a non-profit, class counsel

bases their hourly rates on comparable rates in the private market.  (*Id*. at 9 ¶ 31).  Mr. Lozada

represents that his current hourly rate is $400 and Mr. Saenz represents his hourly rate is $900.

(*Id*. at 9 ¶ 32).  Class counsel argues these rates are reasonable because they are consistent with

the market rate in the Los Angeles area, and contends the "appropriate prevailing rate" for class

counsel is the market rate of Los Angeles rather than Fresno because class counsel "is not aware

of any private attorneys, non-profits or law firms that have filed lawsuits on the same grounds

alleged in this complaint, nor similar lawsuits filed in the Fresno area by attorneys with

comparable experience and skill as Class Counsel."  (Doc. No. 31 at 21.  Class counsel also refers

the Court to cases where the district court approved fees in this range according to the prevailing

rate in the Los Angeles area.  (Doc. No. 31 at 22).

        The Court's review of recent cases suggests that these rates are above those routinely

analyzed and approved as reasonable in this district.  *See, e.g.*, *Cooks v. TNG GP*, No. 2:16-cv-

01160-KJM-AC, 2021 WL 5139613, at *6 (E.D. Cal. Nov. 4, 2021) (calculating lodestar using

rate of $695 for attorneys with 30 years' experience and $660 for attorneys with 20 to 30 years'

experience); *Greer v. Dick's Sporting Goods, Inc.*, No. 2:15-cv-01063-KJM-CKD, 2020 WL 5535399, at *10 (E.D. Cal. Sept. 15, 2020) (calculating lodestar using rate of $695 for attorney with 25 years' experience); *Hartley v. On My Own, Inc.*, No. 2:17-cv-00353-KJM-EFB, 2020 WL 5017608, at *5 (E.D. Cal. Aug. 25, 2020) (calculating lodestar based on $650 per hour for attorneys with 31 and 40-plus years' experience, and $350 for attorney with 12 years' experience); *Rodriguez*, 2019 WL 246652, *13 (calculating lodestar using range of $540 to $695 per hour for counsel with over 20 years' experience).

The Court also considers the hours spent on this case.  At final approval, Attorney Lozada represents he spent 106.3 hours on the case, and Attorney Saenz represents he spent 24.5 hours on the case, for a total of 130.8 hours.  (Doc. Nos. 31-1 at 15, Exhibit B).  Counsel represents that they have excluded hours bill by attorneys who no longer work for MALDEF or who worked on the case for less than five hours, and assigned work to the "lowest billing attorney capable of doing the work."  (*Id.* at 1-11 ¶ 43-45).  The Court believes the hours each attorney spent on this case are reasonable.  And even were the Court to reduce the rates to those more routinely analyzed as reasonable in this district for the purposes of the lodestar cross-check, allowing for rates of $650 for Attorney Saenz and $350 for Attorney Lozada, the lodestar amount would be $53,130.00. [2]  This cross-check confirms the reasonableness of the 25% fee award found above.

Considering the lodestar cross-check and compared to the cases discussed *supra*, this action involved no formal discovery, no depositions, limited motions practice, and no prolonged litigation.  Accordingly, the Court will award a fee of twenty-five percent (25%) of the gross settlement amount, or $30,000.00.

**B. Costs**

Class counsel seeks to recover costs connected to prosecuting this class action.  (Doc. No. 31 at ).  The costs awarded "should be limited to typical out of pocket expenses that are charged

---

[2] The Court calculated the lodestar as follows.  For Attorney Lozada, who reports a total of 106.3 hours billed, applying an hourly rate of $350, his portion of the total lodestar is $37,205.00.  For Attorney Saenz, who reports a total of 24.5 hours billed, applying an hourly rate of $650, his portion of the total lodestar is $15,925.00.

to a fee-paying client and should be reasonable and necessary." *Castro v. Paragon Industries, Inc.*, 2021 WL 2042333, * 12 (E.D. Cal. 2021) (quoting *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007)).  Reimbursable expenses may include "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Id.* (quoting *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d at 1177.

Here class counsel requests reimbursement of $402.00 in costs and expenses, which essentially represents the filing fee.  (Doc. No. 31 at 23; Doc. No. 31-1 at 12 ¶ 52, 16).  The Court reviewed class counsel's declaration and finds all charges incurred to be reasonable. Accordingly, the Court will approve the reimbursement of costs and expenses in the amount requested.

### C. Service Award to Plaintiff Ayala

As previously indicated, a service award is likely appropriate in this case.  (Doc. No. 25 at 15-16).  While discretionary, service awards are "fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  "'Incentive awards typically range from $2,000.00 to $10,000.00,' and '[higher] awards are sometimes given in cases involving much larger settlement amounts.'" *Sanders v. LoanCare, LLC*, No. 2:18-cv-09376-SJO (RAOx), 2019 WL 12340195, at *12 (C.D. Cal. Sept. 16, 2019) (quoting *Bellinghausen*, 306 F.R.D. at 266-67). There is no precise method for calculating the amount of an appropriate service award; such awards are intended to compensate the plaintiff for work performed on behalf of the class and to make up for financial or reputational risk. *Roes, 1-2 v. SFBC Management, LLC*, 944 F.3d 1045, 1057-58 (9th Cir. 2019).  However, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).  In evaluating an incentive award, the district court considers "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted form those actions, the amount of time and effort the plaintiff expended in pursuing

1   the litigation and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977 (internal

2   quotations and alterations omitted); *see also Kahnna v. Intercon Sec. Systems, Inc.*, 2014 WL

3   1379861, at *10 (E.D. Cal. Apr. 8, 2014). Courts in the Ninth Circuit have recognized that

4   $5,000.00 is a presumptively reasonable service award. *See Harris v. Vector Marketing Corp.*,

5   2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012 (collecting cases).

6        Here, named Plaintiff Ayala seeks a service award of $5,000.00. (Doc. No. 31 at 24; Doc.

7   No. 31-1 at 12-13 ¶ 57-60). The service award will be paid by the Defendant, and not from the

8   settlement fund. (*See* Doc. No. 23-2 at 5 ¶ 1(s)). There is no evidence Plaintiff Ayala contributed

9   a significant amount of time to this case. She submitted no declaration as to the number of hours

10  she spent on the case. Plaintiff was not deposed, did not have to respond to discovery, and did

11  not appear for the final hearing in this matter. However, Plaintiff did assist with investigating the

12  case, provide background information and documents, review the pleadings, keep in contact with

13  class counsel through email and phone calls, and review the terms of the settlement agreement

14  before it was executed. (Doc. No. 31 at 25; Doc. No. 31-1 at 12-13 ¶ 57-60). Furthermore, by

15  being the named Plaintiff, Ayala put herself at risk by publicizing her non-permanent immigration

16  status, and had Ayala not been willing to participate in this action, the class members would not

17  have received any benefit. (*Id.*).

18       Considering the circumstances of this case and Ayala's involvement, the Court concludes

19  that the "presumptively reasonable" service award of $5,000.00 to Plaintiff Ayala is fair and

20  reasonable.

21       **D. Settlement Administration Costs**

22       Class counsel requests settlement administration costs of $10,000.00. (Doc. No. 31 at 25-

23  26; Doc. No. 31-1 at 12 ¶ 55). These costs will be paid by Defendant, and not from the settlement

24  fund. (Doc. No. 23-2 at 5 ¶ 1(r)-(s)). Counsel contends the amount is reasonable "because of the

25  settlement administrator's ongoing and anticipated diligent efforts in administrating the

26  settlement, including sending notices to 48 Class Members identified, administering the

27  settlement website, handling communication with interested Class Members, and administering

28  payments from the Settlement Fund." (Doc. No. 31-1 at 12 ¶ 56). Based on the information

provided, the Court finds the settlement administration costs are reasonable.  The Court approves the settlement administration costs in the amount requested.

Accordingly, it is **ORDERED**:

1. Plaintiff's unopposed motion for final approval of the class action settlement (Doc. No. 32) is GRANTED to the extent that the court approves the settlement as fair, reasonable, and adequate;

2. Plaintiff's unopposed motion for attorney's fees, costs, and incentive award to Plaintiff (Doc. No. 31) is GRANTED in part to the extent the Court awards the following sums:

   a.  Class counsel shall receive $30,000.00 in attorneys' fees and $402.00 in costs;

   b.  Plaintiff Ayala shall receive $5,000.00 as a service award; and

   c.  RG2 shall receive $10,000.00 in settlement administration costs and expenses.

3. The parties are directed to effectuate all terms of the settlement agreement and any deadlines or procedures for distribution set forth therein **within eleven (11) months** of this date of this Order;

4. The action is DISMISSED with prejudice in accordance with the terms of the parties' settlement agreement.  The Court retains jurisdiction over this action for purposes of enforcing the parties' settlement agreement; and

5. The Clerk of Court shall CLOSE this action.


Dated:    March 11, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE